In re FIRST STATE BANK OF OKLAHOMA CITY.

No. 8844—Opinion filed Jan. 29, 1918.

Rehearing Denied March 26, 1918.

(171 Pac. 864.)

(Syllabus.)

1.    Taxation — Exemptions — Constitutional Provisions—Depositors' Guaranty Fund Warrants.

Section 7 of the act of March 6, 1913 (Sess.Laws 1913, p. 30), making depositors' guaranty fund warrants "Nontaxable for any purpose whatsoever," is not repugnant to section 50, art. 5, of the Constitution, placing an inhibition upon the Legislature from passing laws exempting property from taxation.

2.    Same—"Property."

Section 50, art. 5, of the Constitution, prohibiting the Legislature from passing laws exempting any property within the state from taxation, except such as is named in section 6, art. 10, was not intended to prohibit the Legislature from exempting warrants issued by the state banking board, pursuant to statutory authorization, in aid of the depositors' guaranty fund. Such warrants being instrumentalities of government do not constitute property within the meaning of the constitutional limitations against exempting property from taxation.

3.    Appeal and Error—Briefs—Review.

The primary object of a brief is to convey information to the court. This cannot be done without clearly stating the manner in which the controverted points arose, the facts which constitute the groundwork of the legal dispute, and the governing propositions of law. This court is not required to examine the record in search of prejudicial errors not pointed out in compliance with its rules, or to decide grave and difficult law questions not urged and supported by argument and the citation of authorities where possible.

Error from District Court, Oklahoma County; Frank Mathews, Assigned Judge.

Proceeding instituted for the correction and adjustment of the assessment of the property of the First State Bank of Oklahoma City for the year 1915. From a judgment of the district court reversing an order of the county board of equalization of Oklahoma county, the board brings error. Affirmed.

Charles B. Selby, Co. Atty., and Porter H. Morgan, Asst. Co. Atty., for plaintiff in error.

Asp, Snyder, Owen & Lybrand and George B. Rittenhouse, for defendant in error.

SHARP, C. J. The one assignment of error contained in the brief of plaintiffs in error is that:

"The lower court erred in reversing the action of the board of county commissioners sitting as a board of equalization."

The assignment is insuffcient under rule 26 of the Supreme Court (47 Okla. page x, 165 Pac. ix) to present for review the errors alleged to have been committed by the trial court. By it we are not informed in what respect the trial court erred, but simply that it did err; neither are we able to say, from an examination of the record, of what the error consisted, as the journal entry is incomplete and obviously omits a portion of the findings of the court, as well as the conclusions based thereon. Aside from the statute authorizing the issuance of the depositors' guaranty fund warrants, and section 50, art. 5, of the Constitution, we are cited to no authorities in support of the contention of the plaintiff in error. Questions involving the proper method of taxation of state banks, or of the shareholders therein, as well as of the right of one or the other, to a deduction from the assessed value of the property taxed on account of corporate ownership of public securities, are too important to be determined in advance of a full discussion upon a case properly presented.

Notwithstanding the failure to observe and comply with the well-known rule of the court as to the requisites of the brief of plaintiff in error, we believe that the public importance of the question of the taxability of the depositors' guaranty fund warrants is such that the court should decide the one and only question briefly considered by counsel for plaintiff in error; that is, the power of the Legislature to exempt from taxation the depositors' guaranty fund warrants issued by the state banking board under authority of section 6, c. 22, of the act of March 6, 1913 (Sess. Laws 1913, pp. 27-30), and by section 7 of which act it was provided that "said warrants shall be nontaxable for any purpose whatsoever." It is urged that as section 50, art. 5, of the Constitution. forbids the Legislature from enacting a law exempting any property within the state from taxation, except as otherwise provided in the Constitution. and as the guaranty fund warrants do not come within the terms of section 6. art. 10, of the Constitution. defining what property shall be exempted from taxation, the act is repugnant to the Constitution. and

that, notwithstanding the legislative intention to exempt, the exemption provision. because of the constitutional limitations, must fail.

The general question of the power of the Legislature to exempt public securities in the form of bonds from taxation was involved and decided by this court in Re Assessment First National Bank of Chickasha, 58 Okla. 583, 160 Pac. 469, L. R. A. 1917B, 294. It is contended, however, by plaintiff in error, that the decision in that case should not control the case at bar. The Chickasha Case involved the taxability of state public building bonds authorized by chapter 89 of an act of the Legislature approved March 15, 1911 (Sess. Laws 1910-11, pp. 194-199, paragraph 7 of which provided that the bonds so issued should be nontaxable for any purpose. In that case we said that:

"The proceeds of the sale of the bonds, authorized by the act, were to be used by the state for the payment of the construction of needed charitable and penal institutions and public buildings. Such was the governmental object sought to be effected by the issuace and sale of said bonds. To its accomplishment the good faith of the state was solemnly pledged to safely keep and preserve the proceeds of the sale and rental of the public lands of the state, named in the act, and to apply said proceeds to the payment of the bonds issued, with interest thereon, as the same matured. It was necessary, or at least so considered. that the credit of the state be employed in order that it might promptly and faithfully discharge the obligations assumed by and resting upon it. The issuance of bonds secured in the manner provided for was a method usual and ordinary of using the state's credit. When a state issues its bonds in conformity to law in order to raise money to accomplish and carry out a governmental purpose, the instruments issued by it for that purpose are instrumentalities of government. Such obligations constitute the means resorted to by the state to effectuate the powers of government. In the hands of the purchasers such credits may be the subject of taxation. unless because of some superior intervening right, providing the intention to tax is manifest. Cases involving the liability of state or municipal bonds to taxation very generally hold that laws providing for the imposition of taxes will not be construed to authorize the collection of a tax upon such bonds, unless there is in the law clear language that such was the legislative intent. The state authorizing the issuance of the bonds. it must be remembered, in terms provided that they should be nontaxable. The pledged immunity on the part of the state attached in the act. so that at no period of time were the bonds subject to taxation."

But the rule there invoked and applied, it would seem, is decisive of the case at hand, as a close analysis of the applicatory principle will disclose. Each involves the conception and administraton of a comprehensive scheme of legislation; the instant one, the control of the state over banks organized and doing business under its laws, and the security afforded depositors therein; and, in a sense, the business public generally. In the 1913 act is found express authority for the issuance of certificates of indebtedness to be known as "Depositors' Guaranty Fund Warrants of the State of Oklahoma," whenever the depositors' guaranty fund on hand should be insufficient to pay the deposits of failed banks, or other indebtedness properly chargeable against the same, in order that the banking board might be able to liquidate the deposits of failed banks, or any other indebtedness for which the board was legally liable. These warrants were made a charge and lien not only upon the depositors' guaranty fund, when collected, but a lien upon the capital stock, surplus, and undivided profits of each and every bank operating under the banking laws of the state to the extent of the liability of any such bank to the guaranty fund. Authority was conferred upon the banking board to negotiate or otherwise dispose of such warrants at not less than par value in such manner as it might deem fit to facilitate the liquidation of failed banks. Power was also conferred upon trust companies, building and loan associations, or insurance companies, organized under the laws of the state, to invest their capital and surplus in such warrants; also, that any foreign corporation, which, under the laws of the state. was required to deposit security in the office of the state treasurer, in order to do business in the state, might deposit guaranty fund warrants in lieu of any other security required by law to be so deposited. Further, that officers having charge of any sinking fund of the state, or any county, city, town, township, or school district thereof, might invest the sinking funds of the state or of any of the enumerated subdivisions thereof, in warrants issued under the authority of the act, and that said warrants should constitute security for the deposit of any public funds and for the investment of trust funds.

The obvious purpose of the Legislature in providing for the issuance and sale of the warrants was to enable the banking board to liquidate the deposits of failed banks and to meet its other obligations chargeable against the depositors' guaranty fund. It was only when such fund on hand was sufficient to pay depositors of failed banks, or other in-

debtedness chargeable against it, that the banking board had authority to issue the certificates. The ultimate object of the legislative enactment was to enable the banking board to have at hand an available fund out of which to pay any indebtedness for which the fund was liable. By such means public confidence in the administration of the state banking law in its entirety was effectuated. The act of December 17, 1907 (Laws 1907-08, c. 6, art. 2), followed by the act of May 26, 1908 (Laws 1907-08, c. 6, art. 1), creating the depositors' guaranty fund, had, in its administration during the formative period of the state, proven a severe tax upon the solvent banks subject to its provisions. Not only was the assessment regularly imposed deemed onerous, but provisions were made for additional or emergency assessments to pay the depositors of failed banks. When it was ascertained that the amount, realized from the fixed and emergency assessments was insufficient to pay off the depositors of all failed banks having valid claims against the depositors' guaranty fund, the state banking board was authorized to issue and deliver to each depositor having such unpaid deposits a certificate of indebtedness therefor bearing six per cent. interest. Such was the situation in the month of December, 1912, and to which the state bank commissioner, in transmitting to the Governor his third biennial report, called attention The letter in part reads:

"Within the first few months of my administration (which began in March. 1911), the fact was disclosed that the department had many insolvent banks on hand; some of which it was imperative to take charge of and liquidate at once; others should have been liquidated thereafter, but as our guaranty law provides that all depositors shall be paid at once, in full. there being no funds on hand, and our banks, as a whole, being unable to stand additional excessive and heavy assessments, the department was prevented from handling them in the proper manner at the time. Since the last biennial report the banking board has made emergency assessments amounting to one and three-fourths per cent. on average daily deposits of all banks. This levy was made to take up outstanding warrants and pay depositors of failed banks."

The conditions were such and the demands upon the guaranty fund so large in amount that its administration had caused the law to be regarded, in some quarters at least, with disfavor, and had made its successful administration a matter of much difficulty. It will be noted that at the following session of the Legislature the act was passed authorizing the banking board to issue and

provide for the sale of certificates of indebtedness to be known as depositors' guaranty fund warrants, the purpose of which was to effectuate generally the laws providing for the guaranty of bank deposits, and at the same time to lessen, so far as might safely be done, the burden upon contributing solvent state banks.

It is no longer open to question that the levy and collection, under state statute, of every bank existing under the state laws, of an assessment based upon average daily deposits for the purpose of creating a depositors' guaranty fund, to secure the full repayment of deposits in case any such bank becomes insolvent, is a valid exercise of the police power, or that the police power of the state extends to the regulation of the banking business. Noble State Bank v. Haskell, 22 Okla. 48, 97 Pac. 590; Id., 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487; Lankford v. Platte Iron Works, 235 U. S. 461, 35 Sup. Ct. 173, 59 L. Ed. 316. As much may be said of the act of March 6, 1913, authorizing the issuance of certificates of indebtedness in aid of the successful carrying out of the law. The latter, as well as the former, was but the valid exercise of governmental control over banks created and doing business under state laws; to make secure the main purpose thereof—that of protection to the depositor—by providing for a fund with which to meet its requirements when needed, by means of money received on account of the sale of the warrants. As in Re Assessment First National Bank, supra, the proceeds of the sale of the bonds were to be used by the state for the payment of the construction of needed penal and charitable institutions and public buildings. So here the proceeds of the sale of the warrants were to be used by the banking board, a branch of the executive department of the state, for the prompt payment of depositors in failed state banks and of the claims properly chargeable against the guaranty fund.

The issuance of the warrants and making them a charge and first lien upon the guaranty fund when collected, and a first lien against the capital stock, surplus, and undivided profits of all state banks to the extent of the liability of such banks to the fund, was a practical, and time has proven a wise, solution of the difficulty of which the bank commissioner complained. In its operation it empowered the banking department to raise money with which to meet its obligations arising under the law, and thereby enable the officers of the board to carry on and perform an important governmental function. In such situation the obligations issued by the board under legislative sanction are instrumentalities of government. As was said in the Chickasha Bank Case, "Such obligations constituted the means resorted to by the state to effectuate powers of government." The fund, whether considered a fund of the state or under the management of the state, was under the direct control and supervision of the state banking board. The purpose of its creation was to enable the board, as an administrative body, to perform the great and central purpose of the act—that of securing depositors in failed state banks the full repayment of their deposits. The warrants so issued constituted an instrumentality of the state adopted and administered under its laws, when the exigency required, and in the furtherance of its general policy of control over its banking institutions. Such instrumentalities are generally exempt from all taxation by the state itself, as well as its municipal subdivisions, either by express provisions of law or by implication. Here the exemption is in express terms; in language not susceptible of misunderstanding. Constituting instrumentalities of government that a part of its laws might be efficiently administered, the warrants did not constitute property within the meaning of the constitutional limitation against exempting property from taxation; hence the rule announced in the Chickasha Bank Case is applicable and conclusive as to the power of the state to exempt the warrants from taxation.

At the time the bank purchased the warrants, its vice president testified that he was advised by the then Governor that the warrants were exempt from taxation. Also, it appears that such was the understanding of the bank commissioner, who, in an official communication to counsel for the bank, called attention to the 1913 act providing that such warrants should bear 6 per cent. interest and should be nonassessable for any purpose. His letter in part is as follows:

"Accordingly, state banks of this state were advised to purchase said warrants, by this department, as a safe, conservative investment, and free from taxation."

The power of the Legislature to exempt the warrants from taxation being made to appear, it follows that the purchasers of such securities are entitled to rely upon the letter of the statute making them "nontaxable for any purpose whatsoever." The exemption from taxation clause is contained in the very statute that gave life and being to the warrants, and upon the inviolability of which the purchasers thereof had full right

to depend. Noble State Bank v. Haskell, supra; In re Assessment First National Bank, supra.

As to how state banks should be assessed and as to the right of such banks, acting either for themselves or for their stockholders, to deductions from the value of their taxable property on account of the corporate ownership of such warrants, we express no opinion. and nothing contained herein shall be construed as decisive of either proposition. These important questions will only be passed upon when properly raised in this court and submitted in conformity to the court rules. That in the instant case the result may be to sustain the trial court's action directing the deduction on account of the ownership of the warrants will not afford grounds for a different conclusion. In such situation we must for the time indulge the presumption that the trial court correctly decided the law in these respects.

The judgment of the trial court is affirmed.

All the Justices concur.