**HALE et al. v. STREETER.**

No. 11417—Opinion Filed June 19, 1923.

**1. Appeal and Error—Questions of Fact—Verdict.**

The jury are the triers of the facts, and the sole and exclusive judges of the evidence and the credibility of the witnesses, and where there is evidence reasonably tending to support the findings and verdict of the jury, same will not be disturbed on appeal. Eichoff v. Russell, 46 Okla. 512, 149 Pac. 146.

**2. Trial — Instructions — Conformity to Pleadings.**

It is not reversible error for the court to refuse to give a requested instruction on the part of defendants, submitting a defense or theory of the case not raised by the pleadings.

**3. New Trial—Impeachment of Verdict—Evidence of Jurors.**

Affidavits or testimony of jurors will not be received for the purpose of impeaching

the verdict which they have solemnly made and publicly returned into court. It being contrary to public policy to permit jurors to impeach the verdict of the jury. Egan v. First Nat. Bank of Tulsa, 67 Okla. 168, 169 Pac. 621.

### (Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Noble County; Edward D. Oldfield, Assigned Judge.

Action by A. L. Streeter against Charles Hale and others for damages. Judgment for plaintiff, and defendants bring error. Affirmed.

England & Duvall and W. M. Bowles, for plaintiffs in error.

P. W. Cress, for defendant in error.

Opinion by JONES, C. This is a case in which A. L. Streeter, defendant in error, was plaintiff below, and Charles Hale, George Miller, Joe Miller, and Zack Miller, plaintiffs in error, were defendants below, and the court will refer to the parties herein as they appeared in the lower court, as plaintiff and defendants.

The record discloses that the plaintiff instituted suit in the district court of Noble county against the defendants, in which he alleged that he was an owner of a 40-acre tract of land situated within the pastures of defendants Miller brothers and that in the year 1912, same was planted to corn, and that in the early part of July, 1912, the cattle of the defendants broke into said enclosure, or farm, and greatly damaged the plaintiff, in that they destroyed a large portion of the corn then growing on said tract of land; and further alleged that same was enclosed at the time of the injury complained of with a three-wire fence on the west and south sides, and a two-wire fence on the east and north sides, and that prior thereto he had entered into an agreement with the defendants Miller brothers, whereby it was agreed that he, the plaintiff herein, would erect and maintain the string of fence on the west and south, and that the defendants would erect and maintain the east and north lines of fence; and that at the time of the construction of said fence by the defendants on the north and east, it consisted of a hog-wire and two barbed wires. That a short time prior to the injury complained of, and after the corn had been planted, defendants removed the hog-wire, leaving only the two barbed wires on the east and north, and the plaintiff alleges that the cattle which destroyed his crop of corn entered said enclosure from the east side by coming over and through the east string of fence, being one of the strings which the defendants, under their agreement, had constructed and agreed to maintain, and alleges that the crop was damaged in the sum of $350.

And for second cause of action, the plaintiff alleges that the defendants Miller brothers were the owners of a jack, which they permitted to run at large in their pastures adjacent to his farm, barn, and lots. And that in June, 1913, said jack broke through the plaintiff's lot fence and into the barn or stall, in which the plaintiff kept his stallion; that said jack caused the stallion to break loose and that they became engaged in a fight, in which the horse was greatly injured, having become entangled with the wire fence and cutting his legs so severely as to destroy his usefulness, and from the effect of which he later died. And that during the combat between the jack and the horse, the plaintiff's colt, of the value of $100, was seriously and permanently injured, losing the use of one leg, and is now of no value.

Plaintiff further alleges that the jack in question was a vicious, dangerous animal, and that his habits and proclivities were well known to defendants. That the stallion was of the value of $500, and by reason of the negligent acts and conduct of the defendants in permitting the jack to run at large, plaintiff has been damaged in the sum of $600, as alleged in his second cause of action.

To which petition the defendants Miller brothers, doing business under the name of the 101 Ranch, file their answer and deny each, all, and every allegation of the plaintiff's petition, except such as are admitted. And further answering aver that if the plaintiff's stallion was injured it was by reason of the negligence and carelessness of the plaintiff in the handling of said stallion, in permitting said stallion to run at large, and make a similar allegation as to the injuries complained of sustained by the colt. And the defendant Charles Hale filed a separate answer, in which he makes a general denial as to plaintiff's first cause of action, and makes a similar answer as that filed by the other defendants as to plaintiff's second cause of action.

As to the first cause of action the evidence is conflicting as to the extent of the damages and as to the manner in which the cattle entered the enclosure, or farm, both of which questions were fairly submitted to the jury by proper instructions given by the trial court, and, as has been re-

peatedly held by this court, the jury are the triers of the facts, the sole and exclusive judges of the weight of the evidence and the credibility of the witnesses, and their findings and verdict will not be disturbed by this court on appeal where there is evidence reasonably tending to support the same. And plaintiff's second cause of action likewise involves purely questions of fact, as to how the injury occurred and to what extent the livestock of plaintiff were injured.

The defendants complain that the trial court erred in refusing to give certain requested instructions to the jury, in which the defendants requested the court to instruct the jury, that in the event they found that the cattle entered the farm of the plaintiff, through the gateway, which had been constructed by the plaintiff and for his own use and benefit, that in such event the defendants would not be liable on plaintiff's first cause of action, and offered some evidence in support of this theory, but, as heretofore stated, the evidence was conflicting as to whether or not the cattle entered the gate or crossed over the east string of the fence, as contended by the plaintiff. And the trial court, in submitting the matter to the jury, instructed the jury that they should find for the plaintiff in the event they found that the cattle entered his field over the east fence, and called the jury's attention to the original agreement between the parties to this controversy as to the manner in which the fence enclosing the farm should be constructed and maintained, to the effect that:

"Defendants Miller brothers agreed with plaintiff to maintain the north and east fence between their several properties and the plaintiff maintain the south and west fences, and if you find and believe from the evidence that the defendants negligently failed to maintain said east fence, and thereby the cattle of the defendants trespassed upon the land of plaintiff and thereby caused damage to growing corn of plaintiff, as alleged in his petition, then you will find for the plaintiff on his first cause of action for such damages as you may feel and believe from the evidence, was proximately caused by such trespass, otherwise you will find for the defendants."

This instrument, we think, fairly submitted the issue involved to the jury—that of failure to maintain the fence—and is a correct application of the law to the facts as proven, and that the refusal of the court to instruct the jury on the theory that the cattle entered the farm through the gate, a defense that was not pleaded, which was maintained by the plaintiff for his benefit,

does not constitute reversible error. The jury evidently found that the cattle entered the farm through the east fence, and there is ample evidence in the record to justify that finding.

The defendants urge as second grounds for the reversal of this case, that the court erred in overruling defendant's motion for a new trial, for the reason that the jury returned what they term a compromise verdict, contending that each of the 12 jurors trying the case arrived at the amount of damages the plaintiff should recover for the loss of his corn and injury to his animals. And the 12 individual sums arrived at were added together and the sum divided by 12, and also asserts that such a verdict cannot be justified in law or reason.

It is true that the jurors should not adopt such a method of procedure in arriving at their verdict, but the defendants, plaintiffs in error, cite no authorities upholding their contention as to the right of the losing party to impeach the verdict of the jury, or the right of the individual jurors to be heard to impeach their verdict. The plaintiff, defendant in error, cites numerous authorities to the contrary from this court.

In Re First State Bank, 68 Okla. 88, 171 Pac. 864, this court says:

"The settled doctrine of the Supreme Court of the state of Oklahoma, is that a juror may not impeach his verdict, but may only be called in support of the verdict"

—and cites the case of Egan v. First National Bank of Tulsa, 67 Okla. 168, 169 Pac. 621, 622, wherein they state:

"We are aware that this presents a much vexed question. But we are of the opinion, the position maintained by the majority of the courts, that a juror cannot impeach the verdict of the jury, furnishes a surer foundation for justice and is supported by better reason than is found in those cases which attempt to make distinctions and furnish qualified conditions under which a juror may impeach the verdict of his jury."

And further cites the case of Keith v. State, 7 Okla. Cr. 156, 123 Pac. 172, and numerous other Oklahoma authorities holding to the same effect.

From an examination of the evidence as disclosed by the case-made, we find the testimony of several witnesses, and the preponderance of the evidence, which amply justified the verdict returned by the jury, and finding no substantial error in the record, the case is affirmed.

By the Court: It is so ordered.