## KIDD v. ROBERTS, *County Treas.*

No. 5863.    Opinion Filed October 13, 1914.

(143 Pac. 862.)

TAXATION — Property Subject—Indian Allotment—Exemption. The grant of nontaxable land to the allottees of the Cherokee Tribe of Indians by virtue of the provisions of an act of Congress of July 1, 1902, c. 1375, 32 St. at L. 716, known as the Cherokee Treaty, covers only the homestead of 40 acres; and the lands of such allottees other than homesteads, from which restrictions have been removed by act of Congress, are subject to taxation

(Syllabus by the Court.)

*Error from District Court, Craig County;*
*Preston S. Davis, Judge.*

Injunction by Felix Kidd against J. V. Roberts, County Treasurer of the County of Craig. Judgment for defendant, and plaintiff brings error. Affirmed.

*Davenport & Rye,* for plaintiff in error.

*Chas. West,* Atty. Gen., *C. J. Davenport,* Asst. Atty. Gen., and *Willard H. Veyles,* Co. Atty., for defendant in error.

BLEAKMORE, J. This proceeding was commenced in the court below to restrain the collection of taxes assessed against certain lands, exclusive of homestead, allotted to a member of the Cherokee Tribe of Indians. The trial court sustained a demurrer to the petition, and plaintiff brings the cause here for review.

The status of the land in question, allotted to the plaintiff, is to be determined by virtue of the provisions of an act of Congress approved July 1, 1902 (32 St. at L. 716, c. 1375), known as the Cherokee Treaty, and certain other acts of Congress subsequently passed, from which we quote at length:

"Sec. 11. There shall be allotted by the Commission to the Five Civilized Tribes and to each citizen of the Cherokee Tribe, as soon as practicable after the approval by the Secretary of the Interior of his enrollment as herein provided, land equal in value to one hundred and ten acres of the average allottable lands of the Cherokee Nation, to conform as nearly as may be to the areas and boundaries established by the government survey, which land may be selected by each allottee so as to include his improvements. * * *"

"Sec. 13. Each member of said tribe shall, at the time of the selection of his allotment, designate as a homestead out of said allotment land equal in value to forty acres of the average allottable lands of the Cherokee Nation, as nearly as may be, which shall be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of the certificate of allotment. Separate certificate shall issue for said homestead. During the time said homestead is held by the allottee the same shall be nontaxable and shall not be liable for any debt contracted by the owner thereof while so held by him. * * *"

"Sec. 15. All lands allotted to the members of said tribe, except such land as is set aside to each for a homestead as herein provided, shall be alienable in five years after issuance of patent.. * * *"

"Sec. 58. The Secretary of the Interior shall furnish the principal chief with blank patents necessary for all conveyances herein provided for, and when any citizen receives his allotment

of land, or when any allotment has been so ascertained and fixed that the title should under the provisions of this act be conveyed, the principal chief shall thereupon proceed to execute and deliver to him a patent conveying all the right, title, and interest of the Cherokee Nation, and of all other citizens, in and to the lands embraced in his allotment certificate.

"Sec. 59. All conveyances shall be approved by the Secretary of the Interior, which shall serve as a relinquishment to the grantee of all the right, title, and interest of the United States in and to the lands embraced in his patent.

"Sec. 60. Any allottee accepting such patent shall be deemed to assent to the allotment and conveyance of all the lands of the tribe as provided in this act, and to relinquish all his right, title, and interest to the same, except in the proceeds of lands reserved from allotment."

Section 19 of an act of Congress approved April 26, 1906 (34 St. at L. 137, c. 1876), provides:

"That no full-blood Indian of the Choctaw, Chickasaw, Cherokee, Creek or Seminole tribes shall have power to alienate, sell, dispose of, or incumber in any manner any of the lands allotted to him for a period of twenty-five years from and after the passage and approval of this act, unless such restriction shall, prior to the expiration of said period, be removed by act of Congress. * * * Provided, further, that all lands upon which restrictions are removed * * * shall be exempt from taxation as long as the title remains in the original allottee."

By act of Congress approved May 27, 1908 (35 St. at L. 312, c. 199), it is provided:

"That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions. All lands, except homesteads, of said allottees, enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions. All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more

Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

By section 4 of said act it is provided:

"That all land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of some other persons than allottees of the Five Civilized Tribes: Provided, that allotted lands shall not be subjected or held liable, to any form of personal claim, or demand, against the allottees arising or existing prior to the removal of restrictions, other than contracts heretofore expressly permitted by law."

Patent to the land in question was issued on the 31st day of October, 1907. It is contended by the plaintiff that, by virtue of the provisions of the foregoing acts of Congress, said lands are exempt from taxation during his ownership thereof.

Our theory of taxation is that taxes are justly imposed as compensation for benefits received by the taxpayer; and general taxes, such as levied and sought to be enjoined here, are paid for the support of the government in return for that protection of life, liberty, and property which our state affords. The power to tax is an attribute of sovereignty, and, except for federal constitutional restraints, is plenary, and limited only to the discretion of those who exercise it. Our Constitution provides:

Article 10, sec. 5: "The power of taxation shall never be surrendered, suspended, or contracted away. Taxes shall be uniform upon the same class of subjects."

Section 6: "All property owned by the Murrow Indian Orphan Home * * * shall be exempt from taxation, and such property as may be exempt by reason of treaty stipulations, existing between the Indians and the United States government, or by federal laws, during the force and effect of such treaties or federal laws."

A careful examination of the act of July 1, 1902, *supra,* the allotment act, discloses that the only grant of nontaxable land

to the Cherokee allottees is made by the provision of section 13, that "during the time said homestead is held by the allottee the same shall be nontaxable and shall not be liable for any debt contracted by the owner thereof while so held by him."

Prior to the time of the execution and delivery to the plaintiff of his patent to the land in question the act of April 26, 1906, was passed, providing:

"That all lands upon which restrictions are removed shall be subject to taxation, and the other lands shall be exempt from taxation, as long as the title remains in the original allottee."

The rule is well settled that exemption from taxation is never presumed. *Philadelphia & W. R. v. Maryland,* 10 How. 376, 13 L. Ed. 461; *Jefferson Branch Bank v. Skelly,* 1 Black, 436, 17 L. Ed. 173; *Gilman v. Sheboygan,* 2 Black, 510-513, 17 L. Ed. 305; *Delaware Railroad Tax,* 18 Wall. 206, 21 L. Ed. 888; *Hoge v. Railroad Co.,* 99 U. S. 348, 25 L. Ed. 303; *Southwestern Railroad v. Wright,* 116 U. S. 231, 6 Sup. Ct. 375, 29 L. Ed. 626; *Erie Railway v. Pennsylvania,* 21 Wall. 492, 22 L. Ed. 595; *Memphis Gaslight Co. v. Shelby Taxing Dist.,* 109 U. S. 398, 3 Sup. Ct. 205, 27 L. Ed. 976; *Tucker v. Ferguson,* 22 Wall. 527, 22 L. Ed. 805; *West Wisconsin Railway Co. v. Supervisors,* 93 U. S. 595, 23 L. Ed. 814; *Vicksburg, etc., Railway Co. v. Dennis,* 116 U. S. 668, 6 Sup. Ct. 625, 29 L. Ed. 770; *New Orleans City, etc., Co. v. New Orleans,* 143 U. S. 195, 12 Sup. Ct. 406, 36 L. Ed. 121, and many others.

It not only appears from the acts of Congress above referred to that no exemption from taxation was expressly, or even inferentially, granted, but by the provisions of the Act of 1906, in force at the time of the issuance of the patent to the plaintiff, it is specifically provided that, when restrictions upon the right to alienate the lands in question are removed by Congress, such lands "shall be subject to taxation."

It was undoubtedly within the power of Congress, by the Acts of 1906 and 1908, *supra,* in the absence of a prior grant vesting in the plaintiff a property right of exemption from taxation, to provide that, upon removal of restrictions upon alienation of such lands, the same should become taxable. The entire

legislation of Congress embraced in the treaties and various acts referred to convinces us that it was at no time the intention of the United States or the Cherokee people to relieve Cherokee allottees from the burden of taxation, except as to the lands allotted as homesteads, and then only during the time same were owned and held by the allottees.

The Supreme Court of the United States, in the case of *English v. Richardson,* 224 U. S. 680, 32 Sup. Ct. 571, 56 L. Ed. 949, in referring to Creek allotments made under almost identically the same treaty provision, said:

"The plaintiff holds a patent dated December 12, 1902. It was issued to her as a member of the Creek Nation when the tribal lands were divided in pursuance to the same general policy as that discussed in *Choate v. Trapp,* just decided. There were, however, a few differences. The tax exemption covered only the homestead of 40 acres, and there was a restriction on alienability for 21 years. The patent, instead of being 'framed in conformity with the agreement,' as in the case of the Choctaws and Chickasaws, bore on its face a provision that the land should be nontaxable; the language of the agreement incorporated in the act of Congress being 'that each citizen shall select from his allotment forty acres of land   *   *   *   as a homestead, which shall be and remain nontaxable, inalienable, and free from any incumbrance whatever for 21 years from the date of the deed therefor, and a separate deed shall be issued to each allottee for his homestead in which this condition shall appear.' "

Plaintiff in error, to sustain his contention of a grant to him of nontaxable lands, depends upon the decision of the Supreme Court of the United States in the case of *Choate v. Trapp,* 224 U. S. 665 32 Sup. Ct. 565, 56 L. Ed. 941. In that case the terms of the Choctaw-Chickasaw treaty of 1898, providing that "all lands allotted shall be nontaxable, while the title remains in the allottee, but not to exceed twenty-one years from the date of patent," was construed, and it was held that under the provisions of that act there was a grant of nontaxable land embracing the entire allotments to allottees of said nations. The same character of grant was made to this plaintiff and other allottees of the Cherokee Nation to the extent of the lands allotted

to them as homesteads during the time the same are owned and held by them.

Plaintiff also relies upon the case of *Whitmire et al. v. Trapp et al.,* 33 Okla. 429, 126 Pac. 578. It is not entirely clear from the language used in that opinion as to whether the homestead alone or the entire allotments of members of the Cherokee Tribe of Indians were involved. If the language used is deemed sufficiently comprehensive to embrace lands other than the homestead allotment, the decision is to that extent over-ruled. We adhere to the holding of the court therein that the homestead allotment of a member of said tribe is exempt from taxation as long as the same is owned and held by the allottee.

Giving to the various acts of Congress referred to the most liberal construction possible favorable to the plaintiff as a member of an Indian tribe entitled to every protection of his property rights under the law which by reasonable intendment may be extended, it is impossible to hold from the language used that there was a grant to him of nontaxable land other than his homestead of 40 acres, which is not involved in this action.

It follows, therefore, that the judgment of the trial court should be affirmed, and it is so ordered.

TURNER, LOOFBOURROW, and RIDDLE, JJ., concur; KANE, C. J., not participating.