PRINCE. Co. Treas., v. ST. LOUIS & S. F. RY. CO.
ST. LOUIS & S. F. RY. CO. v. PRINCE, Co. Treas.

No. 15159—Opinion Filed May 26, 1925.

1. Schools and School Districts — Invalidity of Election for Additional Tax Levy— Recovery of Payments.

Section 9696, Comp. St. 1921, provides: "The annual rate of levy of five mills for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation on condition that a majority of the taxpaying voters thereof, voting thereon, shall vote for such additional levy, and by their majority vote, approve an estimate to be submitted to the county excise board. The election so held for such purpose shall be for yea and nay vote. and the additional levy, so made, shall be certified to the county excise board along

with said estimate." Held: That where a certificate of election shows on its face "that an increased levy sufficient to cover needs, —mills, over and above the regular five mills authorized to be levied for school purposes was voted," it was not a compliance with the statute, and the election held on the question as presented failing to specify the "rate" of the additional levy, was void, and the taxes levied and assessed against property in such school district under and by virtue of such void election are illegal, and when such tax is paid under protest. the sum so paid may be recovered by appropriate action filed for such purpose.

2. Taxation—Validity of Tax — Compliance with Statutory Procedure Mandatory.

Where the statute requires a series of acts to be performed before the owners of the property are properly chargeable with the tax, such acts are conditions precedent to the exercise of the power to levy the tax, and all the requirements of the statute must be complied with, or that tax cannot be collected.

3. Same—Duties of Officers.

Executive and ministerial officials enforce the tax laws, but in doing so they must keep strictly within the authority those laws confer. They neither have nor can have a roving commission to levy and collect taxes from the people without authority of law, but they can only do so in the manner prescribed by the law, which would be the governing rule for their conduct in levying taxes in all cases.

4. Judgment — Conclusiveness — Validity of School District Funding Bonds.

Where the district court has determined the validity of the warrant indebtedness of a school district under the refunding proceedings provided for by the law, and has decreed that the funding bonds sought to be issued are valid and in strict conformity with said funding law, and no objections or exceptions are made to such determination and decree and no appeal taken therefrom, the decree and judgment is final and conclusive.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Lincoln County; Hal Johnson, Judge.

Action by the St. Louis & S. F. Ry. Company against the County Treasurer of Lincoln County, Okla., to recover taxes alleged to have been illegally levied and paid under protest. The first count was abandoned. Judgment was for plaintiff on the second count or cause of action, and defendant appeals. Judgment for defendant on the third cause of action, and plaintiff appeals

and files his cross-bill of exceptions. Affirmed.

Paul Prince, Co. Atty., for plaintiff in error.

W. F. Evans and Stuart, Sharp & Cruce, for defendant in 'error.

Opinion by RUTH, C. This action was brought by the St. Louis & S. F. Ry. Company against Paul Prince as county treasurer of Lincoln county, Okla. The petition alleges three causes of action, and as the first cause of action was abandoned, there remains but the second and third causes of action to be determined by 'this court, and they will be considered in their order. The county attorney will be designated as plaintiff and the St. Louis & S. F. Ry. Company as defendant.

The defendant for its second cause of action alleges that a 12½ mill levy was made against its property in Lincoln county for the year 1922 for the benefit of school district No. 44, and the amount of taxes assessed against the defendant's property on account of said levy was $450.68. That the maximum levy that could lawfully have been made for the benefit of such taxing jurisdiction for current expenses without the vote of the qualified electors, was five mills, and that the electors did not authorize any increase over the five mill levy, and that the levy was illegal and void to the extent of 7.1 mills, and prays judgment for the excess.

A "stipulation as to facts" was signed by counsel for plaintiff and defendant, wherein it was agreed that as to the second cause of action, the assessed valuation of defendant's property in school district No. 44 in Lincoln county for the year 1922 was $37,-246. That a levy of 12.1 mills was made against the defendant for the year 1922 for school purposes in said school district, and the amount of taxes was $450.68, and that the 7.1 mills levy contested as being illegal, produced $264.44, and that the taxes were paid under protest, and suit was filed as provided by law. Judgment was rendered by the court in favor of the defendant in the sum of $264.44, to which judgment the plaintiff duly excepted and brought this cause here regularly for review.

Section 9692, Comp. St. 1921, provides:

"In all counties, the total levy for current expenses in each county, township or school district shall not exceed in any one year the following: * * * School district levy for the support of common schools not more than five mills."

Provision was made, however, for increas-

ing this levy by an amount not exceeding ten mills, and section 9696, Comp. St. 1921, provides:

"The annual rate of levy of five mills for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation on condition that a majority of the taxpaying voters thereof, voting thereon shall vote for such additional levy, and by their majority vote, approve an estimate to be submitted to the county excise board. The election so held for such purpose shall be by yea and nay vote, and the additional levy so made shall be certified to the county excise board along with said estimate. The excise board shall have no power or authority to reduce the levy, so voted, and made at the school district meeting, neither shall said board have the authority to reduce the estimate, unless the .rate of levy so voted, shall be insufficient to raise the amount thereof in which case the board shall reduce and adjust the items of the estimate to an amount within the limits of the levy."

Defendant assumes the position that the 12.1 mill levy was duly approved by a majority of the taxpaying voters, voting at the annual election held March 28, 1922. Section 9708, Comp. St. 1921, provides:

"Provided further, that the school electors of any school district shall vote at the annual meeting (or election) as to whether an excess levy shall be levied for the next ensuing year and the amount of such excess levy. If said excess levy shal receive a majority vote of those voting at said annual meeting or election, then it shall be the duty of the school district board when making the estimate for the next ensuing fiscal year to attach to said estimate a certificate of the vote had at the annual meeting (or election) on the question of making such excess levy for the next ensuing fiscal year and if said excess levy carried, then the county excise board, if an excess levy is required for the ensuing fiscal year, to create a fund equal to the amount of the approved estimate, shall levy said additional levy not to exceed the amount voted by the people at the annual meeting (or election) or so much of the amount of the estimate approved by the county excise board."

Section 10339, Comp. St. 1921, provides for the holding of an annual meeting of each school district on the last Tuesday in March of each year. Even assuming the plaintiff is correct in relying on these sections of the statutes, the action of the school board is open to the following objections: The certificate of the school board filed with the county excise board on July 15, 1922, sets forth the sum total required for school purposes for the fiscal year commencing July 1, 1923, and ending June 20, 1924, but the certificate further discloses that no rate of

levy was submitted to the voters, the certificate being in part as follows:

"We further certify that at the annual meeting held in said district on the 28th day o. March, 1922, the said statement of estimated needs for the ensuing fiscal year was duly approved by a majority of the voters of said district voting at said annual meeting, and, that an increased levy of 'sufficient to cover needs,' mills over and above the regular five mills authorized to be levied for school purposes, was voted by a majority of the taxpaying voters of said district voting at an election held during the said annual meeting; that the vote as to the increased levy was, ayes —: nays—; majority for the levy, —."

It is apparent from the record that no rate of levy was voted' upon, but that a vote was had upon the question of "sufficient to cover needs"; nor does the certificate show the aye and nay vote, or the majority in favor of an increased levy.

The statute (sec. 9696, Comp. St. 1921) clearly intended that the rate of levy should be specifically voted upon. as the statute recites "neither shall the said board (excise board) have the authority to reduce the estimate, unless the rate so voted shall be insufficient to raise the amount thereof, in which case the board (excise board) shall reduce and adjust the items of the estimate to an amount within the limits of the levy."

Section 9, article 10, of the Constitution of Oklahoma, provides that not more than five mills on the dollar shall be levied for school district purposes, for support of common schools, and further provides that the rate of levy may be increased by a majority of the voters, etc. Section 10, art. 10. of the Constitution, providing for the erection of buildings in school districts, provides: "The rates herein limited may be increased when the rate of such increase and the purpose for which it is intended shall be submitted to a vote of the people, etc."

It was clearly the intention of the framers of the Constitution, as well as the intention of the Legislature when it adopted section 9696, Comp. St. 1921. that the people should be advised of the rate of the increase and vote thereon, and under section 9696, the rate actually voted governs, where the rate does not produce sufficient income to meet the estimated needs, and that therefore the estimate must be cut down so as to conform to the revenue to be produced by the rate of mills.

"Levying a tax usually means the fixing of the rate at which property is to be taxed." Emeric v. Alvarado (Cal.) 2 Pac. 418.

"A tax cannot be imposed without fixing the rate." State v. Board of Examiners (Mont.) 104 Pac. 1055.

True it is that under section 9696, the qualified electors of the school district might vote on the amount necessary to be raised, but the amount was not voted on, and the vote was taken on "sufficient to meet needs."

As counsel for defendant state in their brief, it might have been stated by the school board, in perfect good faith, to the voters of the school district, that there would be a substantial balance on hand in the treasury at the end of the fiscal year, to wit, June 30. 1922, and that an additional levy of but two or three mills would be necessary, whereas, as a matter of fact, 7.1 mills additional was necessary.

Section 9696, Comp. St. 1921, conferred no power upon the school district board to submit to the qualified electors of the district, a proposition to vote an "increased levy sufficient to cover needs," but in the words of the statute the qualified electors might approve "the estimate," and if such an election was held. section 9708, Comp. St. 1921, required the school board, when their estimate was approved by the voters, to attach a "certificate of the vote," and we cannot construe this to mean merely a certificate of the "result." That is, that the note showed a majority in favor of the increased levy.

The form of certificate provides for setting forth the ayes, the nays, and the majority, and the plain provisions of the law were not observed in the case under review.

In Nelson, Sheriff, v. Oklahoma City & W. Ry. Co., 24 Okla. 617, 104 Pac. 42, this court said:

"But besides the foregoing defects in the certificate, it was not in compliance with section 6685, inasmuch as it was not signed by the president of the board or attested as required by law. A substantial compliance with the requirements of the foregoing section was absolutely necessary before the machinery for levying and collecting township taxes could be legally set in motion and property subjected to such tax. The county board, in the absence of any information as to the amount of money required to be raised by such levy, as is required by law, would be without authority or jurisdiction to proceed with such levy.

"'Where the statute requires a series of acts to be performed, before the owners of the property are properly chargeable with the tax, such acts are conditions precedent to the exercise of the power to levy tax, and all the requirements of the statute must be complied with, or that tax cannot be collected.' Hewes v. Reis et al., 40 Cal. 255."

Cooley on Taxation (3rd Ed.) p. 45, states the reason for the rule as follows:

"Executive and minis.erial officers enforce the tax laws, but in doing so, they must keep strictly within the authority those laws confer. * * * They neither have nor can have a 'roving commission to levy and collect taxes from the people without au-. thority of law, but (they) can only do so in the manner prescribed by the law, which would be the governing rule for their con- duct in levying taxes * * * in all cases.'"

In Parks et. al. v. West (Tex. Civ. App.) 108 S. W. 466, it is held:

"Under Rev. St. 1895, art. 3996, requiring an order for school district election to state the amount of the tax, or the amount of the bonds, as the case may be, an order must state the exact rate of the tax proposed to be levied, and an election held under an order that the tax should not exceed 25 cents on the hundred dollars valuation is void."

And in Lowrence v. Schwab (Tex. Civ. App.) 101 S. W. 840, it is held:

"Acts of 1905, p. 278, sec. 58, relating to the voting of tax levies for school purposes, provided that the application and order for the election shall specify the amount of taxes to be voted on. Held, that where the application and order stated the purpose of the election was to determine whether a tax not to exceed a certain amount should be levied, thus taking the discretion of the amount from the voters, the election was void.

Such has been the uniform holding of courts where this question has been raised and determined.

Section 9696, supra, provides that the es- timate of the school district board shall be certified to the excise board. This appears to have been done, and upon receipt of the estimate, the excise board found the as- sessed valuation of the property in the school district, and fixed the rate necessary to raise the amount of the estimate to be 12.1 mills and so certified to the county assessor.

Section 9707, Comp. St. 1921, provides:

"If any estimate certified to the excise board for the current expenses of any * * * school district shall exceed the limits pre- scribed by the first section of this article, and the excise board shall be of the opinion that such excess is reasonably necessary for the current expenses of the municipality for which the same is prepared. they shall enter such fact upon the record of their proceed- ings and shall give notice by publication in one issue of some newspaper printed in the county, city, town, or school district, as the case may be, on the second Tuesday after the first Monday in August next thereafter,

for the purpose of submitting to the qual- ified electors of such * * * school district the question of making such increased levy. Such election shall be held under the gen- eral election laws of the state and in each election held under the provisions of this act (article) the amount of each proposed levy shall be printed upon the ballot, with the words 'For the levy' and 'Against the levy,'" etc.

This provision of the law was not com- plied with, notwithstanding the printed form of the "financial statement" and "estimated needs" contains a printed form of "order of excise boards for election," with blank spaces for the insertion of the assessed val- uation, the levy, the excess levy, and the day and date upon which the election should be held, for the purpose of voting such in- creased levy, and for failure of the board to comply with the plain provisions of the statute, the excess levy of 7.1 mills was void, and for the reasons herein stated, the judgment of the court declaring the levy of 7.1 mills void should be affirmed.

Defendant's third cause of action alleges that a levy of 27.7 mills was made against its property in said county for the year 1922, for the benefit of consolidated school district No. 1, and the amount of taxes as- sessed against the property of said railway company on account of said levy was $3,- 628.02. That of the said levy 3.55 mills was illegal and void for the reason that it was made for the purpose of creating a sinking fund for the payment of the principal and interest on the bonded indebtedness of said taxing jurisdiction, which bonded indebted- ness for which said levy was made is illegal and void for the reason that it exceeds the five per centum valuation of all the property in said taxing jurisdiction, as shown by the assessed valuation of said property for the year prior to the issuance of said bonds. Defendant railway company alleges the val- uation of said taxing jurisdiction as shown by the records of the county assessor was $1.145,943, and that five per cent. of said valuation was $57,297, and that the amount of the bonded indebtedness for which said levy was made is $89,010. It is further stip- ulated that the attached copy of the esti- mate for 1922 of consolidated school dis- trict No. 1, and a copy of the judgment of the court authorizing the issuance of the funding bonds may be offered in evidence.

Judgment was rendered for the plaintiff on the third cause of action, and defendant railroad company appeals, and files its cross- bill of exceptions and petition in error. It appears from the record that the funding bonds were authorized in two different. ac-

tions, one for the issuance of $19,000 worth of bonds, and one for $12,510 worth. The journal entry shows that on the 5th day of November, 1921, cause No. 6742 was called for hearing and the court found the board of education had duly authorized the proceeding to fund its outstanding judgment indebtedness; that notice of the application had been duly published as required by law. The court further found:

"That the total outstanding indebtedness of said board of education which may be funded is $19,000; that the indebtedness represented by said judgment was incurred for legal purposes; that the methods provided for the collection of taxes for the payment thereof have been duly followed and the said taxes have been exhausted.

"That said board of education has entered into an agreement with the owners and holders of said judgment for funding and paying the same by the issuance of the negotiable coupon bonds of the board of education, at not less than par and accrued interest.

"That the bonds to be issued to fund the said indebtedness, together with all other outstanding indebtedness of said board of education, do not exceed the constitutional or statutory limitations of said state.

"That under article 3, chapter 7, Revised Laws 1910, there is due authority for the funding of such indebtedness, and the issuance of such bonds."

Upon this judgment being rendered, the funding bonds in the sum of $19,000 were duly issued. On April 15, 1922, cause No. 6885 was called for hearing. This was the application of the school board for the issuance of funding bonds in the sum of $12,-510. Due notice was published and the same proceedings had as in cause No. 6742, and all proceedings appear to be regular on their face.

In defendant's cross-petition in error, it presents three specifications of error, which it argues under one head in its brief. to wit:

"The trial court erred in not holding that said levy was illegal to the extent of 3.55 mills being levied for the purpose of retiring the indebtedness created in excess of the limits prescribed by the Constitution and statutes of the state of Oklahoma."

Defendant contends that section 4272. Comp. St. 1921, is conclusive on the question presented by its appeal. The section recites:

"Limitation of Issues. When a refunding has been agreed upon, it shall be the duty of the proper officers to issue such bonds at the proper rate agreed upon, to the holder of such indebtedness in the manner prescribed in this article; but no bonds shall be issued under this article until the proper evidence of the indebtedness for which the same are issued shall be delivered up for cancellation; Provided, that no bonded indebtedness shall be refunded by the board of county commissioners or any mayor and city council or any board of trustees of any town, township or any school district board. or board of education under this article, except such as have been issued and outstanding at least two years at the time of such refunding; and provided, further, that except for the refunding of outstanding debt, including outstanding bonds and matured coupons thereof, or judgments thereon, or warrants, no bonds of any class or description shall hereafter be issued where the total bonded indebtedness of said county, town, township, school district, or board of education would thereby exceed five per cent. of the assessment for taxation as shown by the last finding and determination by the proper board of equalization for state and county purposes."

Defendant directs our attention to City of Brenham v. German-American Bank, 144 U. S. (36 L. Ed. 390), wherein it is said:

"As there is no authority to issue the bonds, even a bona fide holder of them cannot have a right to recover upon them or their coupons." (citing cases.)

The case cited is not in point, as the charter of the city of Brenham gave it the power to borrow $15,000 for general purposes and to give the lender as vouchers for the repayment of the money, evidence of indebtedness in the shape of nonnegotiable paper, but did not give it power to issue negotiable paper or bonds, unimpeachable in the hands of bona fide holders, while section 4272, Comp. St. 1921, confers power to issue such funding bonds for certain purposes, and the case cited is not persuasive upon this court. In Buchanan v. City of Litchfield (Ill.) 12 Otto, 278 26 L. Ed. 138, relied upon by defendant the court held against the collection of interest represented by the coupons of the bonds, for the reason it was shown by the evidence that at the time of the issuance of the bonds, the bonded indebtedness of the city had reached the constitutional limitation, and the bonds recited:

"This bond is issued under authority of an act of the General Assembly of the state of Illinois. entitled 'An Act authorizing cities, incorporated towns and villages to construct and maintain waterworks; Approved April 15, 1873.'"

And in the body of the opinion, the court said:

"It would seem that if the bonds in question had recitals which, upon any fair construction, amounted to a representation up-

on the part of the constituted authorities of the city, that the requirements of the Constitution were met; that is, that the city's indebtedness, increased by the amount of the bonds in question, was within the constitutional limit, then the city, under the decisions of this court, might have been estopped from disputing the truth of such representations as against a bone fide holder of the bonds." Coloma v. Eaves, 92 U. S. 484; Orleans v. Platt, 99 U. S. 676.

In the case under review, the journal entry of judgment of November 5, 1921, whereby authority to issue these funding bonds was conferred, contains a recital that the board of education has duly authorized the proceedings to fund its outstanding judgment indebtedness; that due notice has been given of the application; that the time and place of hearing have been duly published, and notifies all persons interested to be present at the time proof is made, and to remonstrate against the issue if they so desired. The journal entry further recites:

"That the bonds to be issued to fund said indebtedness, together with all other outstanding indebtedness of said board of education, do not exceed any constitutional or statutory limitation of said state.

"That under article 3, chapter 7, Revised Laws 1910, there is due authority for the funding of such indebtedness and the issuance of such bonds."

Applying the rule announced in Buchanan v. City of Litchfield, supra, to the instant case, it cannot be said that all the requirements of the law have not been met. The recital in the journal entry of judgment, that the bonds to be issued to fund the said indebtedness, together with all other outstanding indebtedness of the board of education, do not exceed any constitutional or statutory limitation of the state, is the solemn finding and judgment of a court of corpetent jurisdiction. made after full hearing had, after due legal notice given to the defendant and all others interested to be present and remonstrate if they so desired, and the defendant having been duly served with notice as required by the statute to be present, and failing so to do, defendant cannot now be heard to contest the finding of the court at the hearing of the application.

The journal entry of judgment contained all the necessary averments and findings required by the Constitution and statutes of the state ·to validate the bonds, and judgment of the court being not appealed, such judgment became final, and is not subject to collateral attack.

In State ex rel. Board of Education of Oklahoma City v. West, Atty. Gen., 29 Okla. 503, 118 Pac. 146, this court said:

"Where the district court has determined the validity of the warrant indebtedness of a school board under the refunding proceedings provided for by law, and has decreed that the funding bonds sought to be issued are valid and issued in strict accordance with the said funding law. and no objections or exceptions are made to such determination and decree and no appeal taken therefrom, the decree and judgment is final and conclusive."

In the body of the opinion (p. 507) the court says:

"When a judgment in such a proceeding is rendered, it necessarily binds and concludes all these (speaking of the officers, taxpayers and inhabitants of the municipality).

"The hearing is had before the court, which exercises the judicial authority of the state, and the judgment rendered in the proceeding is a judgment by the state that its instrumentality and the chosen officers and representatives thereof are acting according to law, and that the warrant indebtedness sought to be funded is valid; that the bonds proposed to be issued, signed, and attested by the court are the valid and binding obligations of the municipality: and that they are issued with the final sanction of a judgment of a competent court which has decided every question in relation to their validity."

Finding no error in the record, the judgment of the trial court should in all matters be affirmed.

By the Court· ¯ is so ordered.