## Protest of FIRST NAT. BANK OF GUTHRIE.

No. 20089. Opinion Filed April 23, 1929.

Bierer & Bierer and Brown & Stater, for plaintiff in error.

Harry F. Blake, Co. Atty., for defendant in error.

ANDREWS, J. The First National Bank of Guthrie, under the provisions of Initiative Petition No. 100, filed with the State Auditor its tax protest against certain taxes on its shares of stock. It alleged that its shares of stock had been assessed; that there had been certified to the county assessor a tax rate of 53.428 mills for ad valorem purposes; that there had been filed with the State Auditor a copy of the financial statements and estimates of needs, including the tax levy as aforesaid, and that the levy so made was illegal, excessive, and void for the reason that under the laws of Oklahoma an annual tax at a lesser rate is imposed upon other property which comes in competition with the money and monied capital invested and used by the bank.

The basis of the protest was that the entire levy of 53.428 mills was void for the reason that it is in conflict with the rule announced by the United States Supreme Court in First Nat. Bank of Guthrie Center v. Anderson, 269 U. S. 341, 70 L. Ed. 295; First Nat. Bank of Hartford v. City of Harford, 273 U. S. 548, 71 L. Ed. 767; State of Minnesota v. First Nat. Bank of St. Paul, 273 U. S. 561, 71 L. Ed. 774, and other cases, and that the shares of stock of the bank were for said reason subject to no tax.

When the matter came on for hearing in the Court of Tax Reivew it was stipulated that the facts set forth in the protest were true and that the only matter for consideration was the law applicable thereto.

· A motion to dismiss was then filed on the ground that the Court of Tax Review had no jurisdiction to review the levy for the reason that the protestant sought to recover and obtain relief in a matter that was special and individual and that did not affect the taxpayers of Logan county other than those engaged in the banking business. It was urged in support of this motion that the provisions of Initiative Petition No. 100 apply only to cases wherein all taxpayers of a taxing jurisdiction are affected alike by the levy and that the provisions of Initiative Petition No. 100 do not apply to protests for reasons other than the universal invalidity of the levy and that in those instances section 9971, C. O. S. 1921, governs. The Court of Tax Review held that the provisions of Initiative Petition No. 100 did not apply to the protest in question for the reason that that protest involved a matter which did not affect all taxpayers in the taxing jurisdiction proportionately alike, and that the remedy of the protestant was under the provisions of section 9971, supra. The protest was dismissed for the reason that the Court of Tax Review had no jurisdiction of the matter.

The cause came here for consideration of one question: Does the Court of Tax Review have authority and jurisdiction to consider a protest involving the application of a legal tax levy to specific property?

For the purpose of this appeal it is admitted that the protestant is a national bank; that it may be taxed only in accordance with the laws of the United States; that the assessment of its property is valid; that the amount of the ad valorem tax rate in question is the amount necessary, when applied to the assessed value of the property in the taxing district, to produce the amount of funds necessary to be raised by ad valorem taxation for the expenses of the municipal subdivision, and

that this appeal is to be determined on the question hereinabove stated.

In determining this question we must first determine the meaning of the word "levies," as used in this act.

We quote from Cooley on Taxation, 1924, sec. 1012, as follows:

"The word 'levy,' as applied to taxation, is given a variety of meanings. Strictly speaking, a levy is the legislative act, whether state or local, which determines that a tax shall be laid, and fixes its amount, and this is the meaning of the term as used in this chapter."

We think that that is the meaning of the word as used in the act in question. Constitution, sec. 9, art. 10, fixes the maximum tax levies and authorizes municipal subdivisions to fix levies within that maximum. Section 9692, C. O. S. 1921, is to the same effect. In both instances the word is used to designate a rate at which property is to be taxed rather than the application of the tax to property. This court said in Prince, County Treasurer, v. St. L. & S. F. Ry. Co., 110 Okla. 141, 237 Pac. 106:

" 'Levying a tax usually means the fixing of the rate at which property is to be taxed. Emeric v. Alvarado (Cal.) 2 Pac. 418.

" 'A tax cannot be imposed without fixing the rate.' State v. Board of Examiners (Mont.) 104 Pac. 1055."

And this was the use made of the word in Re Shirley, 122 Okla. 109. 251 Pac. 736. The use of the word in this act is undoubtedly intended to refer to the rate of taxation to be extended against the property, rather than the physical act of applying the rate to the property.

Under the Constitution and laws of Oklahoma, certain forms of property are subject to taxation and certain forms are exempt therefrom. Const., sec. 50, art. 5; In re Assessment of First Nat. Bank, 58 Okla. 508, 160 Pac. 469; Kidd v. Roberts, 43 Okla. 603, 143 Pac. 862; In re First Nat. Bank, 68 Okla. 88, 171 Pac. 864.

The Legislature has the power to classify property for taxation. Const., sec. 22, art. 10; In re Gross Production Tax, 53 Okla. 24, 154 Pac. 362; In re Oklahoma Nat. Life Ins. Co., 68 Okla. 219, 173 Pac. 376. This power has been exercised by providing for certain forms of taxation on certain kinds of property and leaving all other property subject to taxation to be taxed on an ad valorem basis.

There is nothing in Initiative Petition No. 100 that gives the Court of Tax Review authority to determine whether or not specific property is subject to ad valorem taxation.

To ascertain the intention of the people in the adoption of this initiative measure the court may look, not only to the act, but to the other statutes upon the same or relative subjects, to the evils and mischiefs to be remedied, and to the natural or absurd consequences of any particular interpretation. Blevin v. Graham, 72 Okla. 308, 182 Pac. 247.

At the time of the adoption of this act the method of determining the amount of the tax levy for any municipal subdivision was as follows:

The officer, board, commission or employee charged with the management or control of any department or institution was required to make and file with the board of commission charged with the duty of reporting to the excise board, a report in writing showing the earnings and cost of maintaining his respective office or department for the previous fiscal year, together with an itemized statement and estimate of the probable need thereof for the current or ensuing fiscal year. Section 9697, C. O. S. 1921.

The county assessor was required to assess the property in the municipal subdivision, submit the same to the board of equalization, and after its approval certify the same to the excise board.

The excise board determined the rate of taxation at the rate which when applied to the valuation would produce the amount necessary for the needs of the municipality as estimated.

In many instances this report and the estimate of receipts from other sources was erroneous. Sometimes the excise board would certify a tax rate in excess of that authorized by law. This court had from time to time held that such acts made the tax rate illegal. Albrecht v. Jones, 132 Okla. 277, 267 Pac. 270. As a result of this practice certain taxpayers would pay their tax and recover the amount or some part thereof in a suit therefor, but many taxpayers would fail to do so and thus be subjected to an unequal tax burden. The people recognized this situation and through the adoption of Initiative Petition No. 100 sought to provide a method by which an illegal tax levy might be determined to be illegal and every taxpayer be given the benefit thereof.

It was never intended that this act should

apply to a case where the taxing officer sought to apply a legal tax levy to exempt property, to property taxed under some special proceeding, to double assessments or to other erroneous applications of a legal tax levy which affected only the individual taxpayer.

It will not be determined herein whether the shares of stock of this bank are subject to the ad valorem tax levy for the fiscal year in question, for the reason that that question is not here for determination, but it is clear that a determination of that question would affect only the protestant and other national banks, and that that is not a question of general interest to the taxpayers of Logan county. Protestant does not seek relief because the tax levy is illegal, but because it is illegal as to its property.

It is urged by the protestant that a refund to it will require a refund on the same basis to every other taxpayer in the taxpaying jurisdiction affected by the protest. We agree that if the tax rate in question is illegal within the terms of Initiative Petition No. 100, this contention is true, but we cannot believe that the people intended, because the county assessor attempted to apply a legal tax levy to property not subject to that tax, that all of the property in that taxpaying district should be thereby exempted from taxation for that year. Such was certainly not the intention of the people, and that is not the meaning of Initiative Petition No. 100.

In our opinion Initiative Petition No. 100 provides a time, place, method, and forum with jurisdiction, procedure, and officials for the contesting of alleged illegal tax levies.

In determining whether or not the tax levy is illegal, the financial statements and estimates of probable needs of the officers of the several municipal subdivisions constituting the budget-making bodies of such subdivisions, including counties, cities, towns, school districts, and townships, may be reviewed in order that the amount of money necessary to have been raised by ad valorem taxation may be ascertained. We think that a review may be had of the valuation placed upon property subject to ad valorem taxation in order that this amount may be determined. The method used in computing the rate of tax may be reviewed. If it is determined that the amount appropriated for the needs of the several municipalities is excessive or erroneous, the appropriation may be corrected and the levy thus reduced. If the rate is in excess of that provided by law, the levy may be reduced. If the rate has been extended upon the tax rolls, the tax rolls may be corrected, and if the tax has been paid, the same may be refunded.

The jurisdiction of the Court of Tax Review is limited to a determination of whether or not the ad valorem tax levy is legal, and that court has no jurisdiction to review the application of a legal ad valorem tax levy in an unlawful manner or to specific property.

The act repeals all acts and parts of acts in conflict therewith. Under this provision section 9971, C. O. S. 1921, is repealed in so far as it affects questions which involve the legality of the tax rate determined and fixed by the county excise board. But in so far as that section affects questions which involve the application of a legal ad valorem tax levy in an unlawful manner or to specific property, the same remains in force and effect.

The Court of Tax Review had no jurisdiction to hear this protest, and its action in dismissing the same is affirmed.

LESTER, V. C. J., and HUNT, HEFNER, CULLISON, and SWINDALL, JJ., concur.

MASON, C. J., and CLARK and RILEY, JJ., absent.