Dear District Attorney Macy
¶ 0 This office has received your letter asking for an official Opinion addressing, in effect, the following question:
 Should separate ballot titles for annual ad valorem tax levy elections be printed for each county when a school district overlaps two counties and different millages are applied because one county has repealed the household personal property tax and the other county has not?
¶ 1 Ad valorem taxes in Oklahoma are calculated using the following formula:
 Fair cash value x assessment ratio = assessed valuation x exemptions = taxable value x millage rate = taxes due
¶ 2 For purposes of ad valorem tax, Oklahoma law creates five classes of property, specifically:
 The Legislature, pursuant to authority of Article X, Section 22 of the Oklahoma Constitution, hereby classifies the following types of property for purposes of ad valorem taxation:
1. Real property;
 2. Personal property, except as provided in paragraph 3 of this subsection;
 3. Personal property which is household goods of the head of families and livestock employed in support of the family in those counties which have exempted such property pursuant to subsection (b) of Section 6 of Article X of the Oklahoma Constitution;
4. Public service corporation property; and
5. Railroad and air carrier property.
68 O.S. Supp. 1996, § 2803[68-2803](A).
¶ 3 Under Article X, § 6(b) of the Oklahoma Constitution, a county may vote to exempt "household goods of the heads of families" and "livestock employed in support of the family" from ad valorem taxation. The effect of a county voting to exempt household goods and livestock is a reduction in the fair cash value. Such a reduction, in the absence of any adjustments, results in a reduced taxable value and, therefore, reduced tax revenue. To compensate for lost revenue, Section 8A(b) of Article X provides for a "millage adjustment factor."
¶ 4 The millage adjustment factor provides a calculation formula whereby millage is increased so that the taxable value remaining after the exemption produces the same amount of revenue as was generated prior to adoption of the exemption.[1]
Article X, § 8A(b) of the Oklahoma Constitution provides in pertinent part:
 The adjusted millage rate for a general fund or building fund of each taxing jurisdiction located within a county which exempts household goods of the heads of families and livestock employed in support of the family from ad valorem taxation pursuant to the provisions of subsection (b) of Section 6 of this Article shall be computed, for each taxing jurisdiction, by dividing the net taxable valuation of all property for the year preceding the year in which the exemption of such property becomes effective by the difference between the net taxable valuation of all property for the year preceding the year in which the exemption of such property becomes effective and the net taxable valuation of the household goods of the heads of families and livestock employed in support of the family for the year preceding the year in which the exemption of such property becomes effective. The resulting quotient shall be the millage adjustment factor, and shall be multiplied by the millage rate which would otherwise have been applied for the year in which the exemption of such property becomes effective to derive the adjusted millage rate, which shall be levied against the net taxable valuation of all property, other than the exempt property, within the jurisdiction for the year in which the exemption of household goods of the heads of families and livestock employed in support of the family becomes effective[.]
Okla. Const. art. X, § 8A(b) (emphasis added).
¶ 5 The millage adjustment factor is a one time calculation comparing the net taxable valuation of property within a taxing jurisdiction prior to and after passage of the exemption. The millage adjustment factor is used to negate the potential revenue loss due to passage of the exemption. This is done by increasing millage using the formula provided in Article X, § 8A(b).
¶ 6 Taxing entities do not have unlimited ability to increase millage. The Oklahoma Constitution provides for maximum millage levels. In counties approving the exemption for household goods and livestock, however, the maximum allowable millages are adjusted (i.e., increased) by the millage adjustment factor. This is provided for at Article X, § 8A(c) of the Constitution:
 If a county approves an exemption of household goods of the heads of families and livestock employed in support of the family from ad valorem taxation pursuant to the provisions of subsection (b) of Section 6 of this article, the maximum allowable millage for any millage levied by any taxing jurisdiction located within such county for a general fund or building fund, as prescribed by Sections 9, 9A, 9B, 9C, 9D, 10, 10A, 10B and 35 of this article or as otherwise authorized by Section 36
of Article V of the Oklahoma Constitution, shall be adjusted by multiplying such millage by the millage adjustment factor as specified in subsection (b) of this section. The resulting product shall be the adjusted maximum allowable millage for that particular millage levied by such taxing jurisdiction for a general fund or building fund.
Okla. Const. art. X, § 8A(c) (emphasis added).
 ANNUAL LEVY ELECTIONS
¶ 7 Your first question relates a scenario wherein a school district "overlaps" one county approving the household goods and livestock exemption and another county which has not approved the exemption.[2] You asked this office to determine whether separate ballot language in each county would be required for the annual levy elections. A brief discussion of annual levy elections is in order.
¶ 8 Some levies may be made without any action by the voters. Other levies are authorized by a vote of the people and do not require annual approval. Some millage levies, however, must be approved annually. A school district may make an annual emergency levy and an annual local support levy if the same are approved at an election held for that purpose. Article X, § 9 of the Oklahoma Constitution provides in pertinent part as follows:
 (d) In addition to the levies hereinbefore authorized, any school district may make an emergency levy for the benefit of the schools of such district, in an amount not to exceed five (5) mills on the dollar valuation of the taxable property in such district when approved by a majority of the electors of the district voting on the question at an election called for such purpose. This emergency levy shall provide only sufficient additional revenue to meet the needs of the district each fiscal year as determined by the board of such district and must be approved by a majority of the electors voting on said question at such an election for each fiscal year.
(d-1) In addition to the levies hereinbefore authorized, anyschool district may make a local support levy for the benefit of the schools of such district, in an amount not to exceed ten(10) mills on the dollar valuation of the taxable property in such district, when approved by a majority of the ad valoremtaxpaying voters voting on said question at an election for eachfiscal year called for such purposes.
Okla. Const. art. X, § 9 (emphasis added).
¶ 9 In addition, Article X also provides for an increase in millage:
 For the purpose of erecting public buildings in counties or cities, or for the purpose of raising money for a building fund for a school district which may be used for erecting, remodeling or repairing school buildings, and for purchasing furniture, the rates of taxation herein limited may be increased, when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the people, and a majority of the qualified voters of such county, city, or school district, voting at such election, shall vote therefor: Provided, that such increase shall not exceed five (5) mills on the dollar of the assessed value of the taxable property in such county, city, or school district.
Okla. Const. art. X, § 10 (emphasis added).
¶ 10 To levy the additional annual mills available under Article X, §§ 9 and 10 of the Oklahoma Constitution, a school district must call an election. The Oklahoma Supreme Court has held that when conducting an annual levy election pursuant to Article X, §§ 9 and 10, it was the intent of the framers of the Constitution "that the people should be advised of the rate of the increase and vote thereon." Prince v. St. Louis S.F. Ry.Co., 237 P. 106, 108 (Okla. 1925). Subsection (c) of Section 8A of Article X mandates an increase in the maximum allowable millage when the voters of a county approve the exemption for household goods and livestock pursuant to Section 6(b). By voting to exempt personal property and livestock, voters have also approved adjustment of the millage rate pursuant to Section 8A(b) which provides in pertinent part:
 The resulting quotient shall be the millage adjustment factor, and shall be multiplied by the millage rate which would otherwise have been applied
for the year in which the exemption of such property becomes effective to derive the adjusted millage rate, which shall be levied against the net taxable valuation of all property, other than the exempt property, within the jurisdiction for the year in which the exemption of household goods of the heads of families and livestock employed in support of the family becomes effective[.]
Okla. Const. art. X, § 8A(b) (emphasis added).
¶ 11 The above-quoted subsection (b) mandates use of the millage adjustment factor. This factor is automatically used to adjust the millage levied against the net taxable valuation. Annual levy elections present a problem because the voters must specifically approve the additional annual levy.
 SEPARATE BALLOT TITLES
¶ 12 The object of construction, when applied to the Constitution, is "to give effect to the intent of its framers" and where the language of the constitutional provision is not ambiguous or of uncertain or doubtful meaning, the "intent is to be found in the instrument itself." Latting v. Cordell,172 P.2d 397, 401 (Okla. 1946). Article X, § 8A(b) mandates, by use of the term "shall be," the use of the millage adjustment factor to increase the maximum allowable millage and the actual millage applied; it also provides that the millage adjustment factor shall be multiplied by the millage rate which "would otherwise have been applied." This is a mathematical calculation and not discretionary. It appears clear that the purpose of this constitutional provision is to increase the maximum allowable millage and the actual millage levied to avoid revenue loss. Annual millage elections are not addressed by Article X, § 8A.
¶ 13 While "overlap" school districts appear to be an issue not contemplated by the drafters of Article X, § 8A, the provisions of Sections 9(d) and (d-1) and 10 may be interpreted in a manner consistent with Section 8A.
¶ 14 There is nothing in Article X, § 8A to indicate that there was any intent to change the current status of levies or elections other than to use the millage adjustment factor. Elections may therefore be conducted in districts adopting the exemption stating the millage provided for in Article X, §§ 9 and 10. By doing this, the district establishes the millage rate which "would otherwise have been applied" and this millage is adjusted by the constitutional millage adjustment factor. In effect, by voting for the household goods and livestock exemption the voters have mandated application of the millage adjustment factor. It is not required that use of the millage adjustment factor or the millage resulting from its use be approved annually.
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Separate ballot titles are not required for annual levy elections when a school district is located in a county which has adopted the Article X, § 6(b) exemption and in a county which has not adopted the exemption.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DOUGLAS F. PRICE ASSISTANT ATTORNEY GENERAL
[1] This office has previously opined that the purpose of the millage adjustment is to ensure that there is no revenue loss due to the exemption of household goods and livestock. A.G. Opin. 95-22.
[2] Although stated in terms of school districts overlapping counties which have passed the exemption versus non-exemption counties, the question is also germane to overlapping school districts if any or all counties have passed the exemption. This is true because the actual millage adjustment factor will vary from county to county.