**AMAIMO v. CARTER et al.**

No. 4522.

Court of Civil Appeals of Texas. Beaumont.
June 24, 1948.

Rehearing Denied July 14, 1948.

of lots Nos. 1, 2 and 3 of Block No. 1, was consolidated with said suit filed by Namon Anaimo and tried as one case. The trial was to the court without a jury, and from the judgment in favor of all defendants and against each and all of the plaintiffs, this appeal was perfected.

It was agreed between all parties that Louis Amaimo was the common source of title; that by deed in due form duly executed and recorded of date July 1, 1931, L. Amaimo conveyed lots Nos. 1, 2 and 3, Block No. 1, to the appellant Sadie Debes, and by a like deed of April 24, 1935, conveyed lots Nos. 4, 5 and 6 of Block No. 1, to appellant Namon Amaimo, said lots and blocks being in the L. Amaimo Addition to the City of Beaumont, Jefferson County, Texas. On January 10, 1936, J. W. Kinnear, Tax Assessor and Collector for the South Park Independent School District, executed and delivered to the said School District a deed conveying lots Nos. 1, 2 and 3 above described, reciting that he had duly levied upon said property for the unpaid taxes due thereon, such tax penalties, interest and costs amounting to $51.26. Such deed contained all necessary recitals constituting a conveyance under what is commonly referred to as a summary sale of property for the non-payment of taxes. A similar sale was made by said Tax Assessor-Collector and a similar deed executed by him of date December 11, 1935, conveying lots Nos. 4, 5 and 6 of Block No. 1, of the L. Amaimo Addition to the City of Beaumont, to satisfy the delinquent taxes due the said School District on said property. By a special warranty deed dated March ——, 1943, for a recited consideration of $625.00, South Park Independent School District conveyed lots Nos. 1 through 6 of Block No. 1, of the L. Amaimo Addition to the City of Beaumont, to John R. Carter. Under date of October 4, 1946, the appellee John R. Carter and wife, Mabel Carter, executed and delivered to Jennings Branch a general warranty deed conveying lot No. 2, Block No. 1 of the L. Amaimo Addition, and on January 25, 1945, the said John R. Carter, for a recited consideration of $875.00, conveyed to Allen Pete Lee lots Nos. 5 and 6 of Block No. 1 in said addition. On

J. R. Beck, of Beaumont, for appellants.

Adams & Browne, of Beaumont, for appellee.

COE, Chief Justice.

The appellant Namon Amaimo instituted suit in the form of trespass to try title for the title and possession of lots Nos. 4, 5 and 6 in Block No. 1 of the L. Amaimo Addition to the City of Beaumont, Jefferson County, Texas, in which suit John R. Carter and Allen Pete Lee were defendants. A similar cause of action instituted by Sadie Debes against Jennings Branch, Mann Ray and wife, Alberta Ray, and Alberta McGill, involving title and possession

February 18, 1946, the said John R. Carter conveyed to Mann Ray and wife lot No. 3 of Block No. 1 of the said Amaimo Addition for a recited consideration of $400.00; by deed dated February 12, 1947, for a recited consideration of $475.00, the said John R. Carter conveyed to Alberta McGill lot No. 1 of Block No. 1 of the said Amaimo Addition. It does not appear that the appellee, John R. Carter, ever deeded to any person lot No. 4 of said Block No. 1 of the L. Amaimo Addition. In June, 1945, appellee Mann Ray and wife commenced and completed on the lot which had been conveyed to them by appellee, John R. Carter, a dwelling house into which they moved on June 14, 1945, where they have since resided and are now occupying said property as their residence. It was agreed that such improvements are of a reasonable value of $1400.00; that they were made by Mann Ray and wife in the belief that they owned said lot. Other evidence will be referred to in the course of this opinion.

At the request of appellants, the trial court prepared and filed his findings of fact and conclusions of law, all of which were excepted to by appellants. Among such findings the trial court found that the defendants, and those under whom they claimed title, have established title to the lots in controversy under both the 5 and 10 years' statutes of limitation, Vernon's Ann.Civ.St. arts. 5509, 5510; that the improvements placed on lot No. 3, Block No. 1, by Alberta Ray and Mann Ray were made in good faith, with full knowledge of the appellees and their predecessors in title, and after appellee had discussed with the appellants and their predecessors in title the rights of the parties thereto to such property, and after having been referred to an attorney for the purpose of having the abstract of title examined; that they were advised by the plaintiffs and their predecessors in title that they owned no interest in said land, and that the said Alberta and Mann Ray were at liberty to proceed with the construction of their building; that the appellants and their predecessors in title are estopped to make any claim against the said Mann Ray and Alberta Ray. The trial court further found that the appellants and their predecessors in title have abandoned said property to the claims of the appellees herein, and have waived any claim they had in and to said property; that each of the appellees paid a valuable consideration for the property claimed by them; that in making the sale the Tax Assessor-Collector for the South Park Independent School District did every act and thing necessary to a proper and legal sale of said property for delinquent taxes; that said sale divested title out of appellants and concluded that Article 7328a of Vernon's Civil Statutes of Texas was invalid, void and unconstitutional; that appellants have no right, title or claim in or to the property above described.

By appellants' points they contend that the trial court was in error in concluding that Article 7328a of the statutes was invalid and unconstitutional; in holding that plaintiffs were estopped in making claims of any nature against the defendants, Mann Ray and Alberta Ray; in holding that plaintiffs and their predecessors in title by their conduct have abandoned the property sued for to the claims of the defendants; in holding that defendants have established title to the property in controversy under both the 5 and 10 years' statutes of limitation; in finding that the South Park Independent School District did every act and thing necessary for the legal sale of the property in controversy for taxes, which sale divested title out of plaintiffs; in finding such other facts to support its judgment, and in rendering judgment in favor of defendants.

The attorneys for appellants have furnished us with copies of some three opinions by the Attorney Generals of Taxes dealing with the constitutionality of Article 7328a, and the validity of Summary sales of real property for delinquent taxes, among which we find an opinion rendered by the Hon. Gerald C. Mann while Attorney General of this State, in which he deals with the constitutionality of said Article, as well as the Summary sale of real estate for the collection of taxes in general. It so forcibly interprets the law, as we believe it to be, we take the liberty of quoting extensively therefrom; and

adopt it as expressing our views on the questions discussed therein:

Article 8, Section 15, of the Constitution of Texas, Vernon's Ann. St., confers upon the Legislature the power to provide by statute the method and procedure for the collection of delinquent taxes on real estate. This section reads: "The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes and penalties due by such delinquent, *under such regulations as the Legislature may provide.*"

Prior to 1929, the tax collector under the procedure outlined in Articles 7275–7278, 7280–7282, both inclusive, was empowered to seize and sell real estate for delinquent taxes without foreclosure suit 'if the delinquent was not possessed of a sufficiency of personal property'.

In 1929, however, the Forty-first Legislature at its regular session, by H.B.No. 195, Chapter 48, page 103, appearing as Article 7328a, Vernon's Civil Statutes of Texas, abolished all summary sales of real estate for delinquent taxes and repealed by necessary implication Articles 7275–7278, 7280–7282, both inclusive. We quote this Act in full:

"An Act providing that all sales of real estate for the collection of delinquent taxes due thereon shall be made only after foreclosure of tax lien securing same in accordance with existing laws governing delinquent tax foreclosure suits; repealing all laws in conflict herewith; and declaring an emergency.

"Section 1. That all sales of real estate made for the collection of delinquent taxes due thereon shall be made only after the foreclosure of tax lien securing same has been had in a court of competent jurisdiction in accordance with existing laws governing the foreclosure of tax liens in delinquent tax suits.

"Section 2. All laws and parts of laws in conflict with the provisions of this Act be and the same are hereby repealed.

"Section 3. The fact that existing laws are confusing as to the method of sale of real estate for the collection of delinquent taxes, and the further fact that summary sales of same are now being made without foreclosure of the lien being had in court, thereby depriving property owners of their Constitutional rights, create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days be suspended, and the same is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted." In 1931, the Forty-second Legislature at its regular session by H.B.No.440, Chapter 141, at page 237, of the General Laws of said session amended Article 7272 of Chapter 8, Title 122 of the Revised Civil Statutes of 1925. We quote this Act in its entirety, including the title and emergency clause. The italicized portion of the below quoted Act constitutes Article 7272 prior to its amendment in 1931:

"An act to amend Article 7272, of Chapter 8, Title 122, of the Revised Civil Statutes of 1925, relating to liability of property for taxes so as to provide that a person may pay on a part of the property assessed without being required to pay on all of the property assessed; repealing all laws and parts of laws in conflict herewith, and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. That Article 7272, Chapter 8, Title 122, of the Revised Civil Statutes of 1925, be and the same is hereby amended so as to hereafter read as follows:

"'All real and personal property held or owned by any person in this State shall be liable for all State and County Taxes due by the owner thereof, including tax on real estate, personal property and poll tax; and the Tax Collector shall levy on any personal or real property to be found in his county to satisfy all delinquent taxes, any law to the contrary notwithstanding;* provided, however, that any person including a lienholder, having an interest in property against which there are taxes which have been included in an assessment with other property may pay the proportionate part of the taxes against

954

his property without being required to pay any other taxes included in the assessment. If the parties at interest cannot agree with the Tax Collector upon the amount of taxes to be apportioned to each piece of property then the Commissioners' Court shall make a fair apportionment of the taxes, and the payment of the taxes on a part of the property according to such apportionment will relieve it from liability for the payment of any of the other taxes included in the assessment; and further providing, however, that the provision herein, whereby the taxes against a piece of property may be apportioned, shall apply to taxes due any district, municipality or other subdivision of the State, and in the event the parties at interest cannot agree to an apportionment of the taxes then the Board of Commissioners having authority over the assessment and equalization of such taxes, shall make the apportionment in the manner herein provided.'

"Sec. 2. All laws and parts of laws in conflict herewith are hereby repealed.

"Sec. 3. The fact that existing law relating to the liability of property that may be sold for taxes is inadequate and does not make adequate provision for the collection of delinquent taxes, creates an emergency and an imperative public necessity, that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and said Rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted."

It is to be noted that the title to this Act makes no reference to summary sales by the tax collector. It states the purpose of the Act to be "to provide that a person may pay on a part of the property assessed without being required to pay on all of the property assessed."

■ Obviously, therefore, this amendatory Act cannot be given the construction that the re-enactment of the unchanged portion of Article 7272 was intended to restore the entire machinery for summary sales by tax collectors which had been repealed by necessary implication by Article 7328a in 1929. Articles 7275–7278, 7280–7282, both inclusive, having been rendered ineffective

by Article 7328a, cannot be restored to life by the 1931 amendment to Article 7272, which Act, in its title, contains no mention of any intention to restore to tax collectors the power of summary sales. So to construe the Act would be to render that portion of the amended Act unconstitutional under Article 3, Section 35 of the Constitution which provides that:

"No bill * * * shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

As stated in 39 Tex.Jur. at page 92, "as regards its sufficiency, a title should be such as to give fair indication and reasonable notice of the object, purpose, scope and subject matter of the law, so as to prevent the mischiefs against which the Constitution seeks to guard." Stone v. Brown, 54 Tex. 330; Murphy v. Menard, 11 Tex. 673; Austin Independent School Dist. v. Marrs, 121 Tex. 72, 41 S.W.2d 9.

■ In accordance with the well-established canons of statutory construction, a statute is ever to be construed so as to render it constitutional if its language will reasonably permit. Greene v. Robison, 117 Tex. 516, 8 S.W.2d 655.

It would, therefore, do violence to all rules of statutory construction, a statute is ever to be construed so as to render it constitutional if its language will reasonably permit. Greene v Robison, 117 Tex. 516, 8 S.W.2d 655.

■ It would, therefore, do violence to all rules of statutory construction to declare that it was the intention of the Legislature by its amendment of Article 7272 to re-enact by implication all the elaborate procedure for summary sales of real estate by the tax collector for delinquent taxes. Nor do we believe that the language of Article 7272 which was left unchanged by the 1931 amendment is susceptible of such construction. No mention is made of *sale* of property by the tax collector. It merely provides that he shall "levy on" property "to satisfy all delinquent taxes". The word "levy" may

not be expanded so as to include by necessary implication the authority to *sell*. We quote a few of the definitions of the word "levy" as applied to taxation to be found in Words and Phrases.

"The word 'levy' as applied to taxation has a variety of meanings, but strictly speaking refers to a legislative act, whether state or local, which determines that a tax shall be laid and fixes its amount * * * Protest of First National Bank, 136 Okl. 141, 276 P. 766, 767;" Vol. 25, Words and Phrases, Perm. Ed., page 15.

"The words in the agreement 'taxes assessed for the calendar year 1923' describe the act of laying the tax; the word 'assess' is synonymous with the word 'levy.' It means an official valuation of property for taxation". Lehigh Valley R. Co. v. State Board of Taxes and Assessment, 101 N.J.L. 298, 128 A. 432; Vol. 25, Words and Phrases, Perm. Ed., page 11.

"The word 'levy' is not always used with the same meaning as applied to taxes, it sometimes has been used as meaning to raise and exact by authority of government, or to determine by vote the amount of tax to be raised." Dunn v. Harris, 144 Ga. 157, 86 S.E. 556, 559.

We refer to these definitions merely to indicate that the word "levy" does not have such a definite and clearly delineated meaning as to permit ascribing to it as used in Article 7272 the inclusion of "sale" by the tax collector. The San Antonio Court of Civil Appeals has, in fact, construed this statute so as not to give the tax collector the right to sell real property upon levy, in Davis et al. v. Santa Rosa Infirmary, Tex.Civ.App., 220 S.W. 125. In this case the Santa Rosa Infirmary sought an injunction against the commissioners' court, the assessor and the collector of taxes of Bexar County from "levying upon and selling" for taxes certain real estate. The Court based its decision upon Articles 7630–7632, Revised Civil Statutes of 1911, which are Articles 7272–7274 of the 1925 Revision, and held that the tax collector was not empowered under these articles to sell real estate without a suit to foreclose the tax lien. We quote from the opinion of the Court:

"* * * If appellee had alleged that it owned personal property, and had asked that appellants be restrained from levying upon and selling the personal property to collect the taxes due on the land, it would have asked restraint of an act that appellants could have put into execution under the law, for it is provided that personal property may be seized for any and all taxes due. Articles 7630–7632, Rev. Stats. The application for injunction applied to real property alone.

"The allegations of the petition show that the property had been assessed and the rolls placed in the hands of the tax collector and a suit threatened, but shows that no suit had been instituted. Without a suit and a foreclosure of the tax lien on the real property, no levy could be made and no sale take place, and if, as alleged in the petition, a suit was merely threatened, appellee, when that suit was instituted, could interpose its defense of exemption of its property from taxation and receive all the protection in a court of law that it seeks to obtain in a court of equity."

We believe the above cited opinion of the San Antonio Court to be controlling as to the construction of the word "levy" as used in Article 7272, both as originally enacted in 1879 and as amended in 1931.

"When a statute is re-enacted without material change, it is generally presumed that the Legislature knew and adopted or approved the interpretation placed upon the original act, and intended that the new enactment should receive the same construction as the old one." 39 Tex. Jur. 267; Stephens County v. Hefner, 118 Tex. 397, 16 S.W.2d 804; Cooper v. Yoakum, 91 Tex. 391, 43 S.W. 871.

It cannot be questioned but that the Legislature was authorized under Article 8, Section 15, of the Constitution, above quoted, to provide for the levy and summary sale of real property by the tax collector for delinquent taxes. Section 13 of Article 8 of the Constitution, as amended in 1932, expressly directs the Legislature so to provide. But, as pointed out in our original opinion No. O-683, this

constitutional provision is not self-executing. Since we wrote that opinion the Supreme Court of Texas has expressly so held in Mexia Independent School Dist. v. City of Mexia, 134 Tex. 95, 133 S.W. 2d 118, 134 A.L.R. 1277. Nor has the Legislature, since the adoption of the amendment to Section 13 of Article 8, seen fit to enact the legislation necessary to carry out the purpose of the constitutional amendment. Until the Legislature enacts such statutes and either expressly, or by necessary implication, repeals Article 7328a, that article must continue to prevail as being the latest effective legislative expression on the subject.

■ Moreover, there must of necessity be a set of statutory rules to guide the tax collector in carrying out the summary sales "without the necessity of a suit in Court." It has been the uniform policy of the courts of Texas to construe such statutes strictly, and require scrupulous observance of their every requirement. The Texas Supreme Court, speaking of the method of collecting taxes by levy and sale of the tax collector under an earlier statute, in City of Henrietta v. Eustis, 87 Tex. 14, 18, 26 S.W. 619, 620, said:

"It is not a remedy given for the benefit of the tax payer. It is harsh and summary to that degree that courts have universally held that its provisions, being for the benefit of the state, must be strictly pursued, in order to divest title of the owner."

To the same effect, spoke Mr. Justice Greenwood for the Supreme Court in Brown v. Bonougli, 111 Tex. 275, 232 S.W. 490, 491:

"It has been invariably exacted of one asserting title under a summary sale to show that every legal requirement pertaining to the sale has been strictly and scrupulously complied with. Not only must each thing prescribed by law be done in advance, and at the time, of the exercise of the power to sell, but it must be done exactly as prescribed. Davis v. Farnes, 26 Tex. [296], 298, 299; Meredith v. Coker, 65 Tex. [29], 30."

That the courts of this State have looked with disfavor upon summary sales for taxes is apparent from the following language from the Bonougli case:

"If it were permissible or necessary to look beyond the plain language of the statute, (Articles 7688 and 7689 of the 1911 statutes, which are Articles 7326 and 7328 of the 1925 compilation—which provide for suits to foreclose tax liens) it would seem manifest that it was the intent of the Legislature to remedy the evils, which had been inseparable from the futile attempts to collect taxes through summary sales of land, by authorizing their collection through judicial sales. The evils of the method of summary sales were: First, disregard of the owner's property rights in dispensing with notice and an opportunity to be heard; and, second, inability of the government to compel payment of that to which it was lawfully entitled. The second evil was the natural outgrowth of the first. Taxes could not be collected, save to a small extent, by sales which passed nothing. The nullity of the sales resulted from the practical impossibility of proving punctilious compliance with each and every legal requirement. Yet in no other manner than by exacting proof of such compliance could the owner's right and title be protected from unjust invasion. The remedy which the Legislature adopted for these evils was to throw around the owner's right and title every safeguard furnished by due and orderly judicial procedure, and to put the tax sale, in consummation of a valid judicial foreclosure, on the same plane, with respect to collateral attack, as other execution sales."

In the light of these decisions of the Texas Supreme Court, it is apparent that it would be unreasonable indeed to ascribe to the Legislature the intention to prescribe all the necessarily elaborate procedure for summary sales in the single word "levy" as contained in the unchanged portion of Article 7272 which was amended in 1931; particularly since the word "levy" as used in this very statute had previously been construed by the San Antonio Court of Civil Appeal not to carry with it the right to *sell* real property; and furthermore, since the caption to the Act passed in 1931, amending Article 7272, makes no reference

to any intention to provide by that amendment for summary sales.

█ For the above reasons we hereby reaffirm the conclusion expressed by us in our original opinion No. 0-683, that "neither the Tax Assessor-Collector, nor any one else has the power or authority to levy on and sell real estate for delinquent taxes except after foreclosure of the tax lien by a court, as provided by Article 7328a, Revised Civil Statutes."

It follows, therefore, that we are of the opinion that the sale made by the South Park Independent School District of the lots here involved for the payment of delinquent taxes due thereon was null and void, and passed no title to the appellees and their predecessors in title.

█ Appellees contend that the appellants have waived their rights to eject appellees from the property and are estopped to assert title to said property because of certain acts and conduct on their part whereby they induced Alberta Ray and Mann Ray to erect valuable improvements on lot No. 3 above referred to. The finding of the trial court tends to support appellees' contention, but upon examination of the statement of facts in this cause we are lead to believe that the trial court was confused by the evidence. A brief summary of which is to the effect that soon after Alberta Ray and Mann Ray purchased lot No. 3 from John R. Carter they began to place improvements thereon, at which time they were approached by one L. Amaimo, who at one time seems to have owned this entire addition, and was advised by the said Amaimo that he owned the title to said lot, and advised the Rays to purchase an abstract and carry it to his attorney for examination, which they did. Alberta Ray testified that the attorney told her that "Mr. Amaimo didn't have nothing to do with it, I could go ahead and buy it which I was buying at the time"; and further advised her that Mr. Amaimo did not have anything to do with it, and that she could go ahead and buy it, and at the suggestion of said lawyer she carried the abstract of title to Mr. Amaimo. There is nothing in the record to indicate that Mr. L. Amaimo had any authority to act for either of the appellants. It will be noted that he had parted with his title to all of the property many years before this occurrence. We find nothing in the record to indicate that either of the appellants had anything to say to, nor had any dealings with either of the appellees with reference to the title to the land here involved. The confusion evidently arose by the witness referring to the party with whom she had dealt as Mr. Amaimo without designating which of the Amaimos she was dealing with until on cross examination when she identified Mr. Amaimo as being Mr. L. Amaimo instead of appellant Namon Amaimo. Therefore, we are unable to find any evidence in the record to support the finding of the trial court that appellants are estopped in any manner from asserting title to the land in controversy. Neither have we been able to find any evidence in the record to support the finding of the trial court that appellees have matured title to the land in controversy under either the 5 or 10 years' statutes of limitation. We agree with appellees, Mann Ray and Alberta Ray, that the evidence is sufficient to support the finding of the trial court that the improvements placed by them on lot No. 3, above referred to, were made in good faith, and that they are entitled to recover the value of said improvements, which was agreed to be the sum of $1400.00. Appellants contend that if the sale made by the Assessor-Collector for the South Park Independent School District is void, there can be no recovery for improvements in good faith. This contention is overruled. See Pomeroy et al. v. Pearce, Tex.Com.App., 2 S.W.2d 431, 433, where it is said: "The mere fact that the deed under which the defendant claims title to the land in controversy is void on its face does not, as a matter of law, preclude his recovery of compensation for improvements made by him in good faith. The question of good faith of the defendant is one of fact, to be determined from all the facts and circumstances in evidence".

The judgment of the trial court is reversed and judgment is here entered for appellants for the title and possession of the land sued for, subject, however, to a

judgment in favor of appellees, Alberta Ray and Mann Ray, for the sum of $1400.00 for improvements made by them in good faith upon lot No. 3, Block No. 1 of the L. Amaimo Addition to the City of Beaumont, together with a lien upon said lot to secure the payment thereof.