

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

August 4, 1958

Mr. D. C. Greer
State Highway Engineer
Texas Highway Department
Austin, Texas

Opinion No. WW-487

Re: Whether or not the Civil
Defense and Disaster Re-
lief, Vocational Schools,
Civil Air Patrol and
Texas Turnpike Authority
are exempt from the regis-
tration fees of vehicles
owned and used by them.

Dear Mr. Greer:

We quote from your request for an opinion as follows:

"Article 6675a-3, Section c, R.C.S., authorizes this
Department to issue fee exempt license plates to 'Owners
of motor vehicles, trailers and semi-trailers which are
the property of and used exclusively in the service of
the United States Government, the State of Texas, or
any county, city or school district thereof, . . .',
upon proper application to this Department as provided
in Section 3-aa of this Act.

" . . .

" . . . Within the last few years. . . many other agencies
have been created and we respectfully request your ad-
vice as to whether the following agencies are exempt
from the registration fees of vehicles owned and used
by them:

"Civil Defense and Disaster Relief
Vocational Schools
Civil Air Patrol
Texas Turnpike Authority"

GENERAL DISCUSSION RELATIVE TO
"STATE AGENCIES"

The only case involving a construction of the exemption
afforded the State of Texas by Article 6675a-3(c) as presently
enacted which has reached the Court of Civil Appeals is State
Highway Commission et al v. Harris County Flood Control District
et al 247 S.W. 2d 135 (Tex.Civ.App. 1952 N.R.E.). The court
decided that the Harris County Flood Control District, and the

Harris County Navigation District were both exempt from payment of the vehicle registration fee.  No clear cut tests were established; however, the last paragraph of the court's opinion sets forth three requirements for exemption:

1.  The institution seeking the exemption must own the vehicles involved.

2.  The vehicles must be exclusively used in the service of such institution.

3.  The institution must exist solely as an agent of the State of Texas.

The first two matters are nothing more than fact questions; but in view of the controversy that has centered around the third requirement, the qualifications of a "State agency" for purposes of the exemption afforded by Article 6675a-3(c) need more specific definition.

Heretofore there has been considerable emphasis placed on the distinction between a "political subdivision" and a "State agency" in dealing with questions of this nature.  The theory has been advanced that since Article 6675a-3(c) specifically exempts vehicles belonging to any county, city or school district, which are political subdivisions, all other political subdivisions are thereby excluded from benefits of the act.  This conclusion employs the maxim of construction expressio unius est exclusio alterius, which means "expression of one thing is the exclusion of another."

This position is untenable.  It presumes that political subdivisions other than those named may not be included within the term "the State of Texas" as used in Article 6675a-3(c).  This is tantamount to taking one of the following positions:

1.  Political subdivisions are not State agencies or governmental instrumentalities.

This proposition has been expressly overruled by two notable cases.  The first is Harris County Flood Control District v. Mann, 140 S.W. 2d 1098 (Tex.Sup.Ct. 1940), in which the Supreme Court, speaking through Justice Critz, stated that it was too plain to admit of debate that the Harris County Flood Control District was a political subdivision which functioned as an arm of the State government -- that is, a State governmental agency.  The second is the case of Wilson v. Abilene Independent School District, et al, 190 S.W. 2d 406 (Tex.Civ. App. 1945 Ref. w.m.) in which the court, quoting 37 Tex.Jur.

864, 865, sec. 16, stated "School districts are quasi public corporations. . . which derive their powers by delegation from the State. They are State agencies, erected and employed for the purpose of administering the State's system of public schools."

    2. Political subdivisions even though instrumentalities of the State government, are not exempted by the provisions of Article 6675a-3(c) unless expressly named.

This construction puts your department in the anomalous position of according the exemption to one agency but denying it to another of equal dignity as a governmental instrumentality simply because the second agency was created with some measure of autonomy. The inconsistency of this position is heightened by the fact, which has been judicially recognized, that for a long time the Highway Department has issued exempt license plates to the Lower Colorado River Authority and the Brazos River Reclamation and Conservation District, on the theory that these districts are "State agencies." State Highway Commission v. Harris County Flood Control District 247 S.W. 2d 135 (Tex.Civ.App. 1952, N.R.E.).

The case of Allis-Chalmers Mfg. Co. v. Curtis Electrical Co. 259 S.W. 2d, 918, (Tex.Civ.App. 1953), aff'd 264 S.W. 2d 700 (Tex.Sup.Ct. 1954) contains language which rebuts the contention that the political subdivisions expressly named by Article 6675a-3(c) are the only ones entitled to the exemption therein prescribed. This case involves a construction of the term "this State" used in Article 5160 V.A.C.S. requiring any firm contracting with "this State or its counties or school districts or other subdivisions thereof or any municipality therein" to execute bond for payment of labor and material supplies. The court at page 921 stated:

"If all the various branches of the State Government were beyond the scope of Article 5160 then there would be little of the State to be included within its terms. The Legislature was certainly aware, when it enacted Art. 5160, that the State consisted of many branches and agencies. To name them all not only would have been quite a task but probably would have had the effect of excluding State agencies later created." (Emphasis added.)

The case of State Highway Commission v. Harris County Flood Control District, supra, was decided in 1952. In 1955, Article 6675a-3 was amended and re-enacted by the Fifty-fourth Legislature. It is a well-settled principle of law that upon

re-enactment of a statute without material change, a presumption arises that the Legislature knew and adopted or approved the interpretation placed upon the original act. Amaimo v. Carter 212 S.W. 2d 950 (Tex.Civ.App. 1948 Ref. N.R.E.); Lane v. Ross 151 T. 268, 249 S.W. 2d 591 (1952).

From the foregoing authorities it is apparent that a State agency created and operating for the purpose of performing or carrying out a State governmental function or duty is entitled to have fee exempt licenses issued to vehicles owned by it and used exclusively in its service, whether such agency is labelled "branch," "commission," "board," "agency," or "subdivision."

This conclusion is also supported by the theory that collection of the license fee from State governmental agencies amounts to the State of Texas engaging in the senseless process of taxing itself, in derogation of Article XI, Sec. 9, and Art. VIII, Sec. 2, Texas Constitution, and Article 7150, Sec. 4, V.A.C.S. This theory is ably propounded in Attorney General's Opinion No. V-955, written by Mr. W. V. Geppert of this office.

In the hopes that your position in regard to "State agencies" and the term "State of Texas," as used in Article 6675a-3(c), will be clarified, you are respectfully advised that in order to qualify for issuance of fee-exempt license plates, the following requirements must be present:

1. The agency seeking the exemption must have been created by the laws of the State of Texas and be functioning pursuant thereto.

2. The agency must have been created for the purpose of performing governmental functions or duties.

3. The vehicles for which exemption is sought must be owned by such agency.

4. The vehicles must be used exclusively by the agency.

## TEXAS TURNPIKE AUTHORITY

Section 3 of Article 6674V, V.A.C.S., states:

"There is hereby created an authority to be known as the 'Texas Turnpike Authority,' hereinafter sometimes referred to as the 'Authority.' By and in its name the Authority may sue and be sued, and plead and

be impleaded. The Authority is hereby constituted an agency of the State of Texas, and the exercise by the Authority of the powers conferred by this Act in the construction, operation and maintenance of turnpike projects shall be deemed and held to be an essential governmental function of the State." (Emphasis added.)

It is clear from the provisions of the Act creating the Turnpike Authority that it is designed to exist and function as a body corporate, separate, independent and distinct within itself. Among other autonomic features, the Authority has the power granted to Subdivisions of the State by Article III, Section 52 of the Texas Constitution, to issue turnpike revenue bonds for the purpose of paying all or any part of the cost of a Turnpike project. Article 6674V, Section 9, V.A.C.S.

It is equally clear from the Act creating the Authority and defining its nature, purposes and powers, that it is an arm of the State government - that is, a State governmental agency - performing a governmental function. As such it is included in the provision of Article 6675a-3(c) exempting vehicles which are the property of and used exclusively in the service of the "State of Texas" from payment of the registration fee therein prescribed.

## CIVIL DEFENSE AND DISASTER RELIEF

The "Texas Civil Protection Act of 1951," Article 6889-4, V.A.C.S., creates the State Defense and Disaster Relief Council. Whether or not this particular agency is entitled to the exemption will not be discussed since you state in your letter, "The State headquarters, which is a part of the Governor's Office is not an issue."

Section 4(f) of Article 6889-4 provides that the Governor, or upon his designation, the State Defense and Disaster Relief Council, is authorized, and empowered to assist in providing for adequate local defense organizations under the authority of duly constituted local officials.

It is obvious that local civil defense and disaster relief organizations are not agencies of the State even though the Governor or the Defense and Disaster Relief Council may have assisted in establishing such organizations. Therefore, vehicles belonging to local defense and disaster relief organizations are not covered by the exemption provision in Article 6675a-3(c) V.A.C.S. This is true even though the officials of the organization may also be county or municipal officers or officials.

There is one possibility whereby vehicles used in the service of local defense and disaster relief organizations would be entitled to the exemption. This is in cases where such organizations are created by and operate entirely pursuant to the organic law of a county or municipality. Actually, however, this point is moot, since in such cases the vehicles would be owned by the county or the municipality and would already be entitled to the exemption.

## VOCATIONAL SCHOOLS

The question regarding vocational schools is one that is extremely difficult to answer, since the subject is so broad, and we are not called upon to decide any particular set of facts.

We have carefully checked the statutes on this point, and find that "vocational education" is specifically provided for in several instances. These statutory provisions establish four categories of institutions which are entitled to the exemption by Article 6675a-3(c).

1. Those offering courses in or in conjunction with Texas Public High Schools.

It is apparent that any institution falling within this classification forms a component part of a "school district" of the State. Vehicles belonging to such a school and used exclusively in its service are therefore entitled to the exemption provided in Article 6675a-3(c). (For example of statutory authorization of this type of vocational education, see Article 2680, V.A.C.S.)

2. Institutions made a division of any State College or University and placed under the direction and control of the President and Board of Regents of any such colleges or university.

It need hardly be said that such schools are included within the term "the State of Texas," and vehicles belonging thereto are entitled to the exemption afforded by Article 6675a-3(c) on exactly the same basis as vehicles belonging to the parent college or university.

3. Public Junior Colleges. Vehicles belonging to Vocational Divisions of Public Junior Colleges are entitled to fee-exempt license plates for the same reasons as stated in Number 2 above.

4.    Special schools established by the Legislature for the purpose of administering vocational education under the direction of local school trustees or officials.  These schools are covered by Article 6675a-3(c) by virtue of being made a part of a "school district" by special statute.  At present the only school falling into this category are the "special schools for veterans" created pursuant to Article 2683b, V.A.C.S.

If any of the vocational schools to which you have reference are not institutions of one of the types listed above, we know of no basis by which it can be accorded the exemption in Article 6675a-3(c).

In our recent conversation, you expressed particular interest in whether or not vehicles used by vocational school "coordinators" are entitled to fee exempt license plates.  You are respectfully advised that unless such vehicles belong to vocational institutions of one of the foregoing types, or to the Texas Department of Education, and are used exclusively in the service thereof, they are not so entitled.

## CIVIL AIR PATROL

The Civil Air Patrol was created by the Act of July 1, 1956, § 3,60 Stat. 346, which is codified in Title 36, § 201 through § 208 U.S.C.A.  It was declared to be a body corporate, with perpetual succession.  The purposes of the act were to provide an organization to encourage civilian contribution of efforts, services and resources in the development of aviation and maintenance of air supremacy; and to provide aviation, education and training and to foster civil aviation in local communities to assist in meeting local and national emergencies.  § 202, Title 36, U.S.C.A.

Section 626L, Title 5, U.S.C.A., as amended, established the Civil Air Patrol as a volunteer civilian auxiliary of the Air Force, authorized the Secretary of the Air Force to make available to the Civil Air Patrol obsolete or surplus aircraft, materials and supplies, permitted utilization of Air Force facilities, provided for liaison offices and for detail of Air Force military and civilian personnel.

This section was repealed, and the provisions thereof substantially re-enacted in Section 9441, Title 10, U.S.C.A. by the 84th Congress.  In speaking of this change, Senate Report 1278, 83rd Cong. 2nd Sess., U. S. Code Cong. and Adm. News 1954, p. 2271 states:

"Under Public Law 557, /Section 626h, Title 5,
U.S.C.A./ the Air Force could make available to the
Civil Air Patrol surplus aircraft materiel and equip-
ment.  Under this arrangement Civil Air Patrol ob-
tained surplus equipment directly from the Air Force.
With the passage of the Federal Property and Adminis-
trative Services Act of 1949, however, surplus property
was defined to mean property excess to the needs of all
Federal agencies, with the result that Civil Air Patrol
came after all Federal agencies in acquiring Air Force
surplus property.  Section 1 of the bill would permit
the Civil Air Patrol to acquire equipment excess to the
needs of the Army, Navy, and Air Force without regard
to the Federal Property and Administrative Services Act
of 1949."  (Emphasis added.)

Accordingly, subsection (b) (1) of Section 9441, Title 10,
U.S.C.A., gave the Secretary of the Air Force the power to
give, lend or sell to the Civil Air Patrol without regard to
the Federal Property Administrative Services Act.  This was
the only appreciable change made by the repeal and reenactment
of Section 626L, Title 5, U.S.C.A.

The foregoing provisions compel the conclusion that the
Civil Air Patrol was chartered as an independent, non-govern-
mental entity.  "The Control of the Congress over this Corpor-
ation is only such as is common to virtually all private
corporations granted federal charters - merely requiring the
transmittal to Congress each year of a report of its proceed-
ings and activities for the preceding calendar year. . . the
conclusion is inescapable that the Civil Air Patrol under its
charter, should not be classified as a corporation 'primarily
acting as /an/ instrumentality of the United States.'  Since
it is not a part of the executive department nor an 'independent
establishment of the United States' it is not a federal agency."
Pearl v. United States, 230 F. 2d 243 (U.S. Ct. of App. 1956.)

Since the Civil Air Patrol is not a federal governmental
agency, it is not covered by the provision of Article 6675a-3(c)
exempting vehicles owned and used in the service of the "United
States Government" from the payment of registration fees.

## SUMMARY

Vehicles belonging to the Texas Turnpike Authority
and used exclusively in its service are entitled to fee-
exempt license plates by reason of its being a "State
agency."

Vehicles belonging to local Civil Defense and Disaster Relief organizations are not covered by the provisions of Article 6675a-3(c) since such organizations are not "State agencies"; license plates should not be issued to such vehicles without payment of the prescribed fees.

Vehicles belonging to and used exclusively in the service of Vocational Schools falling into one of the four categories listed above are entitled to fee-exempt license plates.

The Civil Air Patrol is not a United States governmental agency. It is not entitled to the exemption provided in Article 6675a-3(c).

Very truly yours,

WILL WILSON
Attorney General of Texas

By  Jack N. Price
    Assistant

APPROVED:

OPINION COMMITTEE:

Geo. P. Blackburn, Chairman

Linward Shivers
William E. Allen
Wayland C. Rivers, Jr.
J. Arthur Sandlin

REVIEWED FOR THE ATTORNEY GENERAL

By:  W. V. Geppert