October 14, 2005

The Honorable Dib Waldrip
Comal County Criminal District Attorney
150 North Seguin, Suite 307
New Braunfels, Texas 78130

Opinion No. GA-0366

Re: Whether, under an agreement entered into pursuant to section 242.001(d)(4)(B) of the Local Government Code, a county may assess a municipal drainage charge under chapter 402, subchapter C of the same code in connection with the approval of a plat for a subdivision in the municipality's extraterritorial jurisdiction (RQ-0334-GA)

Dear Mr. Waldrip:

Your office asks whether, under an agreement entered into pursuant to section 242.001(d)(4)(B) of the Local Government Code, a county may assess a municipal drainage charge under chapter 402, subchapter C of the same code in connection with the approval of a plat for a subdivision in the municipality's extraterritorial jurisdiction.[1] *See* TEX. LOC. GOV'T CODE ANN. § 242.001(d)(4)(B) (Vernon Supp. 2004-05); *see id.* § 402.045 (Vernon 1999).

I.    **A Municipality's and a County's Joint Authority to Regulate Subdivisions in the Municipality's Extraterritorial Jurisdiction**

A municipality and the county in which the municipality is located each have jurisdiction over plats and subdivisions of land within the municipality's extraterritorial jurisdiction. *See La Cour Du Roi, Inc. v. Montgomery County*, 698 S.W.2d 178, 186 (Tex. App.–Beaumont 1985, writ ref'd n.r.e.); Tex. Att'y Gen. Op. No. JC-0518 (2002) at 2. Local Government Code chapter 212 provides a municipality with general authority to regulate plats and subdivisions, including those within the municipality's extraterritorial jurisdiction, *see* TEX. LOC. GOV'T CODE ANN. §§ 212.002 (Vernon 1999), .003 (Vernon Supp. 2004-05), and counties have general authority to regulate subdivisions within their boundaries under chapter 232 of the same code, *see id.* §§ 232.001(a), .002(a). *See* Tex. Att'y Gen. Op. No. GA-0230 (2004) at 1-2 (summarizing municipal and county authority to regulate subdivisions).

---

[1]*See* Letter from Geoffrey I. Barr, Chief Civil Assistant Comal County District Attorney, to Honorable Greg Abbott, Texas Attorney General (Apr. 4, 2005) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

Local Government Code chapter 242 recognizes that a municipality and a county share jurisdiction in the municipality's extraterritorial jurisdiction and attempts to resolve inconsistencies between the municipality's and the county's subdivision requirements. Section 242.001 prohibits both a municipality and a county from regulating subdivisions and approving related permits in the municipality's extraterritorial jurisdiction. *See* TEX. LOC. GOV'T CODE ANN. § 242.001(c) (Vernon Supp. 2004-05). The municipality and the county must "enter into a written agreement" that allocates "the authority to regulate subdivision plats and approve related permits in the extraterritorial jurisdiction" in one of four ways: by agreeing to grant exclusive jurisdiction to one or the other of them; by dividing the area so that the municipality regulates a part and the county regulates the remainder; by entering into an interlocal agreement under which the municipality and the county adopt one set of regulations; or by consolidating the regulations into a single set. *See id.* § 242.001(c)-(d). Your question concerns this final "consolidation" alternative set forth in section 242.001(d)(4)(B), under which a municipality and a county may establish

> a single set of consolidated and consistent regulations related to plats, subdivision construction plans, and subdivisions of land as authorized by Chapter 212, Sections 232.001-232.005, Subchapters B and C, Chapter 232, and other statutes applicable to municipalities and counties that will be enforced in the extraterritorial jurisdiction.

*Id.* § 242.001(d)(4)(B). Having set out section 242.001(d)(4)(B), we examine the scope of a municipality's authority to adopt a municipal drainage utility system under chapter 402.

## II. Municipal Authority to Establish a Drainage Utility System and to Levy Drainage Charges

Chapter 402, subchapter C, the Municipal Drainage Utility Systems Act (the "Act"), authorizes a municipality to establish a drainage utility system. *See id.* § 402.045 (Vernon 1999); *see also id.* § 402.041 ("Short Title"). "Drainage," for the Act's purposes, means facilities such as bridges, catch basins, culverts, pipes, and treatment works "whether natural or artificial, or using force or gravity, that are used to draw off surface water from land, carry the water away, collect, store or treat the water, or divert the water into natural or artificial watercourses." *Id.* § 402.044(3) (Vernon Supp. 2004-05). A municipal drainage utility system's service area generally may include land within the municipality's extraterritorial jurisdiction. *See id.* § 402.044(8) (Vernon 1999).

After adopting a system, "the municipality may levy a schedule of drainage charges" to be paid by the owners of properties that benefit from the drainage utility system. *See id.* §§ 402.045(d), .047(a). In general, unless a particular lot or tract is exempt by statute, the owner "may not use the drainage system for the lot or tract" without paying "the full, established, drainage charge." *Id.* § 402.047(d); *see also id.* 402.053 ("Exemptions"). The municipality may "bill drainage charges, identified separately, with the municipality's other public utility billings," *id.* § 402.048(a), and must segregate drainage utility system income from other municipal monies, *see id.* § 402.049.

**III.     Analysis: Whether an Agreement Entered Into Under Section 242.001(d)(4)(B), Local Government Code, May Authorize a County to Assess Drainage Charges**

You suggest that a county may assess drainage charges for a municipal drainage utility system in a municipality's extraterritorial jurisdiction under an interlocal agreement entered into pursuant to section 242.001(d)(4)(B). *See* Request Letter, *supra* note 1, at 2. You assert that the authority to assess drainage charges under the Act is "a subdivision related permitting activity," *id.*, and therefore may be part of "a single set of consolidated and consistent regulations related to plats, subdivision construction plans, and subdivisions of land" under section 242.001(d)(4)(B). TEX. LOC. GOV'T CODE ANN. § 242.001(d)(4)(B) (Vernon Supp. 2004-05); *see* Request Letter, *supra* note 1, at 2.

Because you specifically refer to the authority to "assess" drainage charges, as opposed to authority merely to collect drainage charges, we do not consider whether a county may collect drainage charges that the municipality has assessed under the Act. The term "assess" implies a valuation of property and a corresponding calculation of the amount of the charge to be paid by the property owner. *Cf. Amaimo v. Carter*, 212 S.W.2d 950, 955 (Tex. Civ. App.–Beaumont 1948, writ ref'd n.r.e.) (stating that the term "levy," which is synonymous with "assess," means an official valuation and a determination of the amount of tax to be imposed); BLACK'S LAW DICTIONARY 111 (7th ed. 1999) (defining "assessment" to mean "[d]etermination of the rate or amount of something, such as a tax . . . ."; "[i]mposition of something, such as a tax . . . , according to an established rate . . . .").

Chapter 242 does not further clarify which regulations are "related to plats, subdivision construction plans, and subdivisions of land" for purposes of section 242.001(d)(4)(B). Nor have we found any judicial or attorney general opinions that construe the phrase. In addition, the Act does not indicate, expressly or implicitly, that the adoption of a municipal drainage utility system, including the levy of drainage charges, is such a regulation. Given this vacuum, we closely examine section 242.001(d)(4)(B)'s plain language to attempt to assign meaning to the phrase.

The phrase must be read in context and in light of the statute as a whole. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) ("Words and phrases shall be read in context . . . ."); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) (stating that a court will "'read [a] statute as a whole and interpret it to give effect to every part'") (quoting *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002)); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) (stating that a court must not "give one provision a meaning out of harmony or inconsistent with other provisions . . . ."). Our goal is to effectuate the legislative intent, relying solely on the statute's plain language if at all possible. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) (stating that the words the legislature chooses "should be the surest guide to legislative intent").

The type of regulation that may be the subject of an agreement under section 242.001(d)(4)(B) is one "related to plats, subdivision construction plans, and subdivisions of land." TEX. LOC. GOV'T CODE ANN. § 242.001(d)(4)(B) (Vernon Supp. 2004-05). Chapters 212 and 232,

which section 242.001(d)(4)(B) explicitly names as authorizing regulations related to plats, subdivision construction plans, and subdivisions of land, pertain specifically to the regulation of subdivisions by municipalities and counties, respectively. *See id.* chs. 212, 232 (Vernon 1999 & Supp. 2004-05). Under section 212.002, which the Texas Supreme Court has determined provides a city with zoning authority, *see Quick v. City of Austin,* 7 S.W.3d 109, 121 (Tex. 1998), a municipal governing body may adopt rules "governing plats and subdivisions of land . . . to promote the health, safety, morals, or general welfare of the municipality and the safe, orderly, and healthful development of the municipality." TEX. LOC. GOV'T CODE ANN. § 212.002 (Vernon 1999); *see also id.* § 212.003(a) (Vernon Supp. 2004-05) (permitting a municipality generally to extend ordinances adopted under section 212.002 to its extraterritorial jurisdiction). A municipality must approve a plat that, among other things, "conforms to" both the municipality's "general plan . . . and its current and future . . . public utility facilities" and the municipality's "general plan" for extending itself "and its roads, streets, and public highways . . . in its extraterritorial jurisdiction, taking into account access to and extension of sewer and . . . the instrumentalities of public utilities." *Id.* § 212.010(a)(1)-(2) (Vernon 1999).

Chapter 232 requires, in general, "[t]he owner of a tract of land located outside" municipal limits to have a plat prepared if the owner divides the land into two or more parts "to lay out" a subdivision, lots, or parts of the tract that would be dedicated to public use or for lot-owners' use. *Id.* § 232.001(a). The county must approve a plat that meets chapter 232's requirements. *See id.* § 232.002(a)-(b) (Vernon Supp. 2004-05). A county has express authority to "adopt reasonable specifications to provide adequate drainage for each street or road in a subdivision" and to "adopt reasonable specifications that provide for drainage in the subdivision to . . . efficiently manage the flow of stormwater runoff" and to "coordinate subdivision drainage with the general storm drainage pattern for the area," among other things. *Id.* § 232.003(5), (8). In short, chapters 212 and 232 relate specifically to subdivisions and the platting process.

Chapter 402, by contrast, relates neither specifically to plat-related regulations nor specifically to subdivisions. Chapter 402 relates to a drainage system—a public utility—that serves territory the boundaries of which are not tied to the subdivision boundaries. Subdivision property owners must pay the drainage charge levied under chapter 402 unless section 402.053 exempts them, but they are affected just as other benefitted property owners throughout the service area are affected. In addition, a drainage utility system is classified as a public utility and is not limited geographically to subdivisions. And the fact that the municipality has express authority to "bill drainage charges . . . with the municipality's other public utility billings" indicates that a county may not assess a drainage charge, on the municipality's behalf, as part of the plat approval process under section 242.001(d)(4). *Id.* § 402.048(a) (Vernon 1999).

We thus conclude that a drainage charge levied in accordance with chapter 402 is not a regulation "related to plats, subdivision construction plans, and subdivisions of land." *Id.* § 242.001(d)(4)(B) (Vernon Supp. 2004-05). An agreement entered into in accordance with section 242.001(d)(4) therefore may not assign to a county the authority to assess a drainage charge for a municipal drainage system adopted under the Act.

**IV.     Analysis: Whether an Interlocal Contract Entered Into Under Section 791.011(a), Government Code, May Authorize a County to Assess Drainage Charges**

You suggest that, if a county may not assess the drainage charge under an interlocal agreement executed in accordance with section 242.001(d)(4)(B), it may do so under the Interlocal Cooperation Act, Government Code chapter 791. *See* Request Letter, *supra* note 1, at 1-2; *see also* TEX. GOV'T CODE ANN. ch. 791 (Vernon 2004). The contracting authority Local Government Code section 242.001(d)(4)(B) and Government Code chapter 791 provide is cumulative. *See* Tex. Att'y Gen. Op. No. JC-0518 (2002) at 8-9. The Interlocal Cooperation Act authorizes local governments, including counties and municipalities, to contract with each other for the performance of certain "governmental functions and services." TEX. GOV'T CODE ANN. § 791.011(a) (Vernon 2004); *see id.* § 791.003(4)(A) (defining "local government"). The phrase "governmental functions and services" is defined to include "streets, roads, and drainage." *Id.* § 791.003(3)(c).

An interlocal contract may be entered into under chapter 791 to "provide a governmental function or service that each party to the contract is authorized to perform individually." *Id.* § 791.011(c)(2); *accord* Tex. Att'y Gen. Op. No. GA-0225 (2004) at 5. "Conversely," as this office recently has stated, chapter 791 "does not authorize a local government to contract for services it is not authorized to perform individually." Tex. Att'y Gen. Op. No. GA-0225 (2004) at 5.

A county has no individual authority to establish a drainage utility system or to assess benefitted property owners for drainage charges. Accordingly, an interlocal contract entered into pursuant to chapter 791 may not authorize a county to assess drainage charges on behalf of a municipality with a drainage utility system.

## S U M M A R Y

An agreement between a county and a municipality entered into pursuant to Local Government Code section 242.001(d)(4)(B), which provides for a consolidated and consistent set of regulations related to plats, subdivision construction plans, and subdivisions of land in the municipality's extraterritorial jurisdiction, may not authorize the county to assess a drainage charge on behalf of the municipal drainage utility system. In addition, an interlocal contract between a county and a municipality entered into under Government Code chapter 791 may not authorize the county to assess a drainage charge on behalf of the municipal drainage utility system.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee